Mary O. FURNER, Petitioner,

v.

COMMISSIONER OF INTERNAL REV-
ENUE, Respondent.

No. 16225.

United States Court of Appeals
Seventh Circuit.

Feb. 28, 1968.

William J. Wise, Edward F. Michalak,
John S. Pennell, Chicago, Ill., McDermott,
Will & Emery, Chicago, Ill., of counsel,
for petitioner.

Mitchell Rogovin, Lee A. Jackson, Jon-
athan S. Cohen, Tax Division, U. S. De-
partment of Justice, Washington, D. C.,
Meyer Rothwacks, Attorney, Department
of Justice, Washington, D. C., for re-
spondent.

Darrell G. Renstrom, Washington, D.
C., for National Education Ass'n, amicus
curiæ.

Before SCHNACKENBERG, KILEY
and FAIRCHILD, Circuit Judges.

FAIRCHILD, Circuit Judge.

Petitioner Mary O. Furner is a junior high school teacher who devoted the school year 1960–1 to full time graduate study and claimed the expenses as deductions from income for those years. The commissioner disallowed the deductions and the tax court, in a reviewed opinion, with two judges dissenting, upheld the commissioner.[1]

The "historical" facts are undisputed, and this statement of them is condensed from the findings of the tax court:

Petitioner majored in social studies at a teachers' college, and received her bachelor's degree in 1957. She taught at Argyle, Minnesota in grades 7–12 during the school year, 1957–8. In the school years 1958–9 and 1959–60 she taught social studies (primarily history) at eighth grade level at Crookston, Minnesota.

Petitioner believed that her teaching required greater depth of subject matter than she possessed. Because it would be difficult to obtain the course work she wanted in history on a part time basis, she arranged to attend Northwestern University as a full time graduate student during the school year 1960–1. The Crookston school system does not customarily grant leaves of absence and she resigned in June, 1960.

She taught at a reading camp during the summer of 1960, and attended Northwestern from September, 1960 until she received a master of arts degree in August, 1961. She performed no teaching duties during that period.

In April, 1961, petitioner signed a contract to teach in a junior high school in De Kalb, Illinois, beginning in September, 1961. In De Kalb she has taught two history courses, regarded as "social studies".

The tax court found as ultimate facts (1) that petitioner was not engaged in carrying on a trade or business of teaching during the time she was attending Northwestern University and (2) that she took the graduate work primarily for the purpose of obtaining a new position or substantial advancement in position or for meeting the minimum qualifications of certain schools for a teacher of social studies at the junior high school level. The tax court held that each of those facts made the expenses nondeductible.

The commissioner concedes on review that ultimate fact (2) is no longer relevant, even if correctly determined. His counsel tells us that

"new Treasury Regulations were promulgated on May 1, 1967, by T.D. 6918, 1967–21 Int.Rev.Bull. 8 (amending Section 1.162–5, Treasury Regulations on Income Tax (1954 Code)), and these Regulations are to be applied retroactively. They supply more objective criteria for determining if educational expenditures are properly deductible as business expenses than was the case under pre-existing Regulations which emphasized the taxpayer's subjective intent. For example, they provide that educational expenses will be nondeductible if they relate to training for a 'new trade or business', but treat all teaching and related duties as involving the same general type of work. (Sec. 1.162–5(b) (3).) They do not use the 'new position' test, and we therefore do not propose to argue here that taxpayer was undertaking her graduate training in order to obtain such a 'new position'. Further, it appears that the Commissioner did not assert the 'minimum requirements' argument in the Tax Court, and the taxpayer's discussion of the record evidence relating to this point * * * has merit. We therefore do not propose to raise the 'minimum requirements' theory in this Court."

Thus we are concerned solely with the tax court's determination, whether it be finding of fact or conclusion of law, that petitioner was not carrying on a trade or business of teaching while a graduate student under these circumstances.

1. 47 T.C. 165.

The fact that petitioner was not on leave from a school system employer while studying during a normal school year seems to have been deemed critical. If petitioner had been on leave from Crookston without pay, all other facts being identical, the commissioner's present position,[2] though his counsel tells us he is reconsidering it, would have led him to allow the deduction.

We gather that the tax court would reach the same conclusion. The tax court said:

"In the instant case since petitioner was not employed or otherwise actively engaged in teaching or on a leave of absence from any teaching position or actively seeking to uninterruptedly continue in a teaching position by obtaining such a position to commence prior to the completion of her graduate studies, we conclude that at the time the expenditures here involved were made, petitioner, though still a member of the teaching profession, was not engaged in the practice of that profession so as to be 'carrying on' a trade or business."

■ Apparently the commissioner and the tax court accord controlling importance to whether a teacher's period of study (expenses for which would otherwise qualify for deduction) interrupts the regularity of the teacher's employment as a teacher during successive school years, following the traditional pattern. Enrollment for study is not deemed to interrupt regularity (1) if undertaken during traditional vacation periods, (2) if the study is part time during a school year while the teacher is also performing teaching duties, or (3) if the study is full time during a school year, but an employment relationship technically continues by virtue of leave, granted by the employing school.

■ The governing statute is the very general provision allowing deduction of "all the ordinary and necessary expenses paid or incurred * * * in carrying on any trade or business * * *."[3] The commissioner and tax court put too much emphasis, we think, on whether the course of study displaces performance of teaching activity during the period of the year when it is traditional for teachers to teach, and give insufficient consideration to the broader question whether the relationship of the course of study to intended future performance as a teacher is such that the expenses thereof can reasonably be considered ordinary and necessary in carrying on the business of teaching. Factors which make it advantageous to undertake the course of study in a single year rather than to spread it out over several summers are surely relevant.

■ Expert testimony in the record before the tax court leads to two conclusions, nowhere rebutted. One is that it is not unusual, and is becoming more usual, for teachers to enroll in full time graduate study for an academic year in order to keep up with expanding knowledge and improve their understanding of the subjects they teach. It also appears, as is common knowledge, that many school systems require teachers to earn additional academic credits from time to time.

An amicus brief filed by an attorney for the National Education Association suggests that graduate courses in education can be obtained conveniently in summer sessions and evening extension classes, but that the full range of courses in liberal arts and sciences is usually available only during the academic year with reduced offerings in summer sessions.

Given these facts, a year of graduate study under the circumstances disclosed here is as much a normal incident of carrying on the business of teaching as study during vacation periods.

The record also indicates that it was not common in 1960 for schools to grant leaves of absence; that in some systems

---

**2.** Rev.Rul. 60–97, 1960–1 Cum.Bull. 69.

**3.** 26 U.S.C. sec. 162(a). It is not claimed that Regulation 1.162–5 resolves the question before us.

where leave is granted a teacher receives reduced compensation and agrees to return after the leave, but that most leave is unpaid, there is no agreement to return, and most teachers do not return.

The amicus brief refers us to a statistical survey [4] showing that there are many school systems where leaves, without pay, for professional study are not available.

 Our second conclusion is that leave status seems to have little meaning as a criterion of whether or not a teacher's graduate study is a normal incident of carrying on the business of teaching. In petitioner's case, where her school employer did not grant leaves, it can not, in our opinion, be a reasonable basis for finding that her study was not such an incident.

The tax court's finding, based as it was, on the fact petitioner was not on leave, is clearly erroneous. The present record, moreover, would not support a finding that petitioner did not reasonably expect to return to teaching activity after her year of study, nor a finding on any other basis that her graduate study was not a normal incident of her carrying on the business of teaching.

The commissioner and the tax court rely upon Canter v. United States [5] holding that expenses incurred by a nurse for professional education, after leave from her previous nursing job had expired, were not deductible. The majority opinion in that case does, indeed, support the idea that being on leave status is critical. Approval was given to "the proposition that, before a person can qualify for a deduction under section 162, he must either be engaged in remunerative activity or have a definite connection, such as leave of absence, with a position".[6] We respectfully disagree with the breadth of that statement, excluding, as it does, consideration of the relationship of the education with intended future resumption of business activity.

We point out, however, that the facts in *Canter* were quite different from those before us. Mrs. Canter ceased active performance of her nursing duties February 1, 1958, and obtained an educational leave of absence until November 1, 1958. She was enrolled in a university from February 1, 1958 to June, 1960 when she was awarded a bachelor's degree. She pursued graduate study from September, 1960 to June, 1962 when she received a master's degree. She then again became employed. The deductions claimed were for 1960, part for undergraduate and part for graduate study. It does not appear what if any demonstration was made to the court that undergraduate and graduate study for a period of over four years was a normal incident of carrying on the business of nursing.

On its facts *Canter* is distinguishable from the case before us.

The decisions of the tax court will be reversed.

---

4. National Education Research Bulletin, Volume 44, Number 3 (1966).

5. (1965), 354 F.2d 352, 173 Ct.Cl. 723.

6. Id. at 354.