Daniel J. Coughlin III and Patricia A. Coughlin v. Commissioner.
Coughlin v. Commissioner
Docket No. 551-68.
United States Tax Court
T.C. Memo 1969-80; 1969 Tax Ct. Memo LEXIS 214; 28 T.C.M. (CCH) 459; T.C.M. (RIA) 69080; April 22, 1969, Filed Daniel J. Coughlin III, pro se, 3626 Barcraft View Terrace, Bailey's Crossroads, Va. Charles L. Dunlap, for the respondent. SCOTT Memorandum Findings of Fact and Opinion SCOTT, Judge: Respondent determined a deficiency in petitioners' income tax for the calendar year 1965 in the amount of $244.28. One of the issues raised by the pleadings has been conceded by petitioners, leaving for our decision the following: Whether petitioners are entitled to deduct amounts expended by one of them during the calendar year 1965 for tuition and books in connection with attending Georgetown University and American University. Findings of Fact Some of the facts have been stipulated and are found accordingly. Petitioners, husband and wife who resided at the time of the filing of their petition in this case at Bailey's *215 Crossroads, Virginia, filed their joint Federal income tax return for the calendar year 1965 with the district director of internal revenue at Richmond, Virginia. Daniel J. Coughlin III (hereinafter referred to as petitioner) became employed by Government Employees Insurance Company (hereinafter referred to as GEICO) in 1961 as a clerk. In April 1962 petitioner was promoted to an underwriter with GEICO. GEICO has the general requirement that a person employed as an underwriter have a Bachelor's Degree from college. Approximately two-thirds of the persons employed by GEICO as underwriters are college graduates employed directly into the position of underwriter from outside of the company. GEICO, however, has a policy of promoting individuals already in the employ of the company to positions which their supervisors believe they are qualified to fill even though such individuals may not meet the educational requirements for the positions. It is, therefore, not uncommon for an individual who has not graduated from college to be promoted by GEICO to a position of an underwriter. In such instances the work performance of the individual in a prior job is considered to qualify him to be *216 employed as an underwriter even though he does not have a college degree. In October 1963 petitioner was promoted by GEICO to the position of Methods and Controls Analyst and petitioner continued in that position throughout the year here in issue. The job description for the position of Methods and Controls Analyst with GEICO under the title, "Education and Training Required" stated "college graduate." Under work experience required the statement "2 years in this Company in such positions as Underwriter" appeared. Under comments the notation "12-18 months for 'Good' rating" was made. When petitioner was promoted from underwriter to the position of methods and controls analyst, his supervisor was of the opinion that he was qualified for the position by his prior experience with GEICO even though at the time of his promotion he was not a college graduate. The job description for a methods and controls analyst with GEICO stated the major duties of the position as follows: 1. ANALYZES and APPROVES or REFERS to Supervisor proposed changes in interdepartmental forms and procedures; CONTACTS personnel in other Departments to obtain information and clarification on proposed changes; REVIEWS *217 existing forms and procedures and RECOMMENDS changes and refinements to improve efficiency; DEVELOPS new forms required by Department. 2. CONDUCTS surveys of Division procedural functions to determine compliance with Department instructions; PREPARES reports and submits reports on findings; COORDINATES with personnel of other Departments corrective action on routine interdepartmental breakdowns; REFERS major breakdowns to Superior with complete details and recommendations. 3. MAINTAINS records and PREPARES reports relative to preparation of and adjustments to the Department's budget requirements; in coordination with 461 Supervisor of Methods, Reports and Controls, CONDUCTS studies and SUBMITS report on special projects assigned by Assistant Vice President. 4. PARTICIPATES in Company-wide committee work and REPORTS results and RECEIVES instructions from Superior. 5. PERFORMS any other related duties which may be assigned. Petitioner's immediate superior in GEICO while petitioner was employed as an underwriter and as a methods and controls analyst was B. R. Hendrickson, an assistant vice president of GEICO (hereinafter referred to as Hendrickson). Hendrickson further described *218 petitioner's duties with GEICO while petitioner was in the position of methods and controls analyst as follows: * * * analyze and approve or refer to me proposed interdepartmental forms and procedures. He must contact personnel in other Departments to obtain information and clarification on proposed changes; review existing forms and procedures and recommend changes and refinements to improve efficiency; and develop new forms required by the Underwriting Department. As a member of the Underwriting Home Office Staff he conducts surveys of Division procedural functions to determine compliance with Company and Department instructions. He prepares reports and submits reports on his findings. Mr. Coughin coordinates with personnel of other Departments corrective action on routine interdepartmental breakdowns and refers to me major breakdowns with complete details and recommendations. In addition, it is required that he maintain records and prepare reports relative to preparation of and adjustments to the Departments budget requirements. In coordination with the Supervisor of Methods, Reports and Controls, he conducts studies and submits reports on special projects assigned by me. *219 Another important duty is Mr. Coughlin's participation in Company-wide committee work. Too, he must perform any other related duties which I may assign. In the spring of 1960 petitioner filed with Georgetown University an "Undergraduate Application Form," applying for admission to Georgetown University as of September 1960. Petitioner applied for admission to the School of Business Administration of Georgetown University. Petitioner was admitted to Georgetown University in the fall of 1960 as a candidate for the degree of Bachelor of Science in Business Administration and he was granted that degree by Georgetown University on June 5, 1967. Petitioner was in attendance at college first as a full-time and later as a part-time student from the time he entered Georgetown University until he was granted his degree. Petitioner attended Georgetown University for the spring semester of 1965, taking courses in Money and Banking, Advance Composition, and Metaphysics. He attended Georgetown University in the summer of 1965 taking courses in the Philosophy of Man, Sociology II, and Principles of Marketing. In the fall of 1965 petitioner took a course in Government Regulation of Business at *220 Georgetown University and took a course in Earth Science Principles at American University for transfer to Georgetown University. The content of these courses was as follows: Money and Banking I Historical forms and concepts of money; the origin and development of banking institutions, especially in the United States; the nature of bank credit; the money markets and the Federal Reserve System; introduction to monetary theory and policy. Advance Composition Primarily a writing course, English 4 is devoted to a research paper and to the techniques needed in writing reports. A research manual and class instruction treat the use of libraries, note-taking, bibliographies, footnotes, etc. Philosophy II (Metaphysics) The problem of change. The structure of being. The analogy of being. Causality, finality, the existence of God. The transcendentals. The nature of man. (Philosophy of Man) The philosophical study of the being and nature of man. Special attention given to the nature of human knowing and willing. The problem of freedom and transcendence. SOCIOLOGY II - Industrial Sociology The second semester alerts the student continually to the relevance of the sociological *221 factors in business and industry. The social, economic, technological, and physical environment of industry. Social groups in the community and in the factory. Work groups and union-management relations. The supervisor-worker relationships. MARKETING I Designed to acquaint students with distribution channels from the viewpoint of a business manager who has to adapt his distributive organization to changing conditions. Subjects analyzed include buyers' attitudes, retail and wholesale institutions, marketing of industrial goods and agricultural products. Consideration is also given 462 to selected problems in merchandising policy, sales management, brands and trade marks, advertising, sales promotion, public relations, pricing, and market research. GOVERNMENT REGULATION OF BUSINESS
A survey of relationships among government, business and agriculture; antitrust legislation, tariffs, and other economic, political, legal and administrative factors arising from the expanded role of government in economic activity. Principles of Earth Sciences I (4) Lecture identical with 27.100; laboratory: geographic grid, construction and interpretation of planimetric, topographic, and geologic *222 maps, weather analysis, navigation, identification of minerals, rocks, and fossils. Three hours lecture, four hours laboratory, filed trip. Laboratory fee, part-time students, $10. During the calendar year 1965 petitioner spent a total amount of $1,109.81 for tuition and books in connection with his studies at Georgetown University and American University. Petitioners on their Federal income tax return for the calendar year 1965 claimed a deduction for $1,110 as Education Expense. Respondent in his notice of deficiency disallowed petitioner's claimed deduction for education expense with the explanation that: The education did not maintain or improve skills required by you in your employment and that the expenditures for the education constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses. Opinion Petitioner takes the position that he is entitled to the deduction for the amounts expended for tuition and books in connection with the courses he took at Georgetown and American University during the year 1965 as an ordinary and necessary business expense under section 162, I.R.C. *223 1954, [1] and section 1.162-5, Income Tax Regs., as amended by T.D. 6918, 1967-1 C.B. 36[2] and made applicable at a taxpayer's election to years prior to 1968 by Rev. Rul. 68-191, 1968-1 C.B. 67. It is petitioner's position that the knowledge he gained by the courses he took during the year 1965 improved his skills as a methods and controls analyst with GEICO. Petitioner argues that in the year 1965 he had 463 met the minimum requirements of the position of methods and controls analyst in that his combination of education and experience had made him qualified for that position when he was placed in it in 1963. *224 Petitioner contends that B.S. degree in Business Administration which he was working toward obtaining at Georgetown University would not, within the meaning of respondent's regulations, section 1.162-5(b)(3) qualify him for a new trade or business. Respondent takes the position that the courses which petitioner took during the year 1965 did not improve his skills as a methods and controls analyst. Respondent further argues that the B.S. degree to which these courses were prerequisite was necessary to qualify petitioner at the minimum level for the position of methods and controls analyst with GEICO. Respondent further contends that the college degree for which petitioner was a candidate in 1965 would qualify petitioner for a new trade or business. In our view the evidence here shows that petitioner by a combination of experience and education had met the minimum requirements of the position of methods and controls analyst during the year here in issue Even though the stated requirement of GEICO for education and training for a methods and controls analyst was a college graduate, it was the custom of GEICO to fill such a position as well as the position of underwriter which an *225 individual was required to hold for a period of 1 to 2 years before he was eligible to be a methods and controls analyst from within the company when feasible. The requirement that a person to be eligible for the position of methods and controls analyst be a college graduate could be waived in instances in which the experience of the individual indicated such waiver to be desirable. When experience was substituted for a college education in selecting an applicant for a position with GEICO, the minimum requirements of the position were considered by the company to have been met by the employee. While it may be, as respondent argues, that there would be a number of positions of various types for which petitioner would be qualified when he received his college degree in Business Administration for which he was not qualified prior to receiving that degree, we do not agree that obtaining his B.S. degree in Business Administration would qualify petitioner for a new trade or business within the meaning of respondent's regulations. We agree with petitioner that the concept of a "new trade or business" within the meaning of respondent's regulations refers to a trade or profession substantially *226 different from that in which the individual is presently engaged and not merely a better position in the same type of occupation in which the individual is currently employed. In Lawrence H. Bakken, 51 T.C. 603 (Jan. 13, 1969), we held that an engineer who was enrolled in law school working toward a J.D. degree was engaged in education qualifying him for a new trade or business and therefore under the regulations promulgated by respondent in 1967 would not be entitled to deduct the expenses of his education even though the amount expended did also improve his skills in the position he held. The basis of our holding was that law is a different "business" from "engineering." In Furner v. Commissioner, 393 F. 2d 292 (C.A. 7, 1968), reversing 47 T.C. 165, the Government conceded in its argument before the Court of Appeals that a higher paid position within the teaching profession was not a "new trade or business" within the meaning of section 1.162-5(b)(3), Income Tax Regs., as promulgated in 1967. The most difficult question in this case is whether the courses taken by petitioner during the year 1965 were education which *227 would improve petitioner's skill in his employment with GEICO. As petitioner points out it is not necessary under respondent's 1967 regulations which he has elected to have applied in his case for the principal or primary purpose of his education to be to improve his skills in the position he holds in order for him to be entitled to deduct the expenditures for such education. It is necessary only that the education is such that it does improve his skills in his present employment. We have recognized as proper the construction placed by petitioner on respondent's regulations as promulgated in T.D. 6918. Lawrence H. Bakken, supra, and James A. Carroll, 51 T.C. 213, 219 (1968). In the instant case petitioner's immediate superior at GEICO testified at some length as to why in his opinion the courses which petitioner was taking at Georgetown University and the one course which he took at American University during the year 1965 would improve petitioner's skills as a methods and controls analyst with GEICO. In substance this witness testified that in his opinion the courses taken by petitioner 464 would improve his understanding of human relations *228 and work responsibilities which would be helpful to a person in an administrative position, would increase his knowledge of government which increased knowledge would be useful to a person in the insurance business, would increase and sharpen his skills in making written presentations of his work, would increase his understanding of the financial community of which insurance is a part, would give him a better ethical and moral understanding of business relationships, and would help him to understand the different geographic aspects of the country which might be a consideration in placing some types of insurance. This witness also stated that the course in marketing would assist petitioner in understanding merchandising and advertising which are involved in the insurance business to the extent that insurance companies advertise for new purchasers of their policies. The witness in no way connected the increased understanding and judgment which he believed petitioner would acquire from the various courses he was pursuing during 1965 to the precise work of petitioner as a methods and controls analyst with GEICO. In substance petitioner's supervisor testified that the learning obtained *229 by an individual through a college education increases the ability of that individual to perform administrative type work for an insurance company. We doubt that petitioner's "general understanding and competency" were increased by the education he received at Georgetown University and American University in 1965. Neither do we doubt that petitioner was in a better position to advance as an insurance executive when he received his B.S. degree. The greater opportunities for advancement in business of a college graduate as compared to a person of lesser education is one of the inducements to many persons to obtain a college degree. The issue we must decide is whether this general increase in competency which a person obtains from a college education is the improvement of "skills required * * * in his employment" which entitles the individual to deduct the expenses of his education as a business expense. Petitioner enrolled in Georgetown University as a candidate for a B.S. degree in Business Administration prior to becoming employed by GEICO. During the year here in issue he was pursuing the intention he had when he enrolled in Georgetown of obtaining such a B.S. degree. The courses *230 he took were those he needed to obtain his B.S. degree and were in no specific or direct way related to his duties in his employment at GEICO. In James A. Carroll, supra we held that the costs of education which were only "tenuously related" to a taxpayer's employment and which were "of an inherently personal nature" were not deductible as ordinary and necessary business expense. In that case we state (at p. 218) that, "we think that for a business deduction to be allowed, there must be a showing of a moredirect and substantial relationship to his skills in his employment" that is shown in the obtaining of a general college education by a policeman. We pointed out that while the 1967 regulations allow a deduction for education that maintains or improves skill, we did not interpret the regulations to be designed to allow a deduction for the expenses of education "designed to increase the petitioner's general understanding and competency." Petioner in the instant case has shown no more direct relation between the courses he took in 1965 and his work as a methods and controls analyst at GEICO than the taxpayer in James A. Carroll showed between the college courses he was *231 taking and his work as a policeman. On the basis of our holding in James A. Carroll, supra, we conclude in the instant case that there is not sufficient relationship between the courses petitioner was taking in 1965 and his work at GEICO to consider the expenditure for tuition and books for such courses to be an ordinary and necessary business expense within the meaning of section 162 and respondent's regulations issued thereunder. Decision will be entered for respondent. 465 Footnotes
1. All references are to the Internal Revenue Code of 1954. ↩
2. Sec. 1.162-5 Expenses for Education. - (a) General rule. - Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education - (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation. (b) Nondeductible educational expenditures - (1) In general. Educational expenditures described in subparagraphs (2) and (3) of this paragraph are personal expenditures or constitute an inseparable aggregate of personal and capital expenditures and, therefore, are not deductible as ordinary and necessary business expenses even though the education may maintain or improve skills required by the individual in his employment or other trade or business or may meet the express requirements of the individual's employer or of applicable law or regulations. (2) Minimum educational requirements. (i) The first category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is required of him in order to meet the minimum educational requirements for qualification in his employment or other trade or business. The minimum education necessary to qualify for a position or other trade or business must be determined from a consideration of such factors as the requirements of the employer, the applicable law and regulations, and the standards of the profession, trade, or business involved. The fact that an individual is already performing service in an employment status does not establish that he has met the minimum educational requirements for qualification in that employment. Once an individual has met the minimum educational requirements for qualification in his employment or other trade or business (as in effect when he enters the employment or trade or business), he shall be treated as continuing to meet those requirements even though they are changed. * * * (3) Qualification for new trade or business. (i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. In the case of an employee, a change of duties does not constitute a new trade or business if the new duties involve the same general type of work as is involved in the individual's present employment. For this purpose, all teaching and related duties shall be considered to involve the same general type of work. * * *↩