JOHN M. AND GERALDINE G. CANNON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Cannon v. Commissioner
Docket No. 6680-77.
United States Tax Court
T.C. Memo 1980-224; 1980 Tax Ct. Memo LEXIS 361; 40 T.C.M. (CCH) 541; T.C.M. (RIA) 80224; June 26, 1980, Filed; As Amended July 29, 1980 *361 John M. Cannon, for petitioners. William E. Bogner, for the respondent. WILBUR
MEMORANDUM FINDINGS OF FACT AND OPINION WILBUR, Judge: Respondent determined the following deficiencies in petitioners' Federal income taxes: [1]
Tax Year
Deficiency
1973
$ 1,767.95
1974
3,593.00
1975
3,369.00
The issues for decision are: (1) Whether Geraldine G. Cannon's educational expenses are deductible under section 162; (2) Whether certain automobile expenses are deductible and whether petitioners are entitled to an investment tax credit with respect to the purchase of the automobile; (3) Whether a club entrance fee is deductible; (4) Whether petitioners are entitled to a casualty loss deduction, and if so, in what amount; (5) Whether the expenses incurred in maintaining an office in petitioners' home are deductible as ordinary and necessary business expenses. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the attached exhibits are incorporated herein by this reference. John M. and Geraldine M. Cannon (hereinafter referred to as petitioners or John *362 or Geraldine) filed joint Federal income tax returns for the years 1973 through 1975. At the time of the commencement of this suit, petitioners were residents of Northbrook, Illinois. In his notice of deficiency, the respondent disallowed the following deductins which were claimed by the petitioners: Item
Tax Year
1973
1974
1975
Automobile expenses
$1,850
$5,833
$5,621
Educational expenses
2,382
4,660
2,126
Home Office expenses
576
629
Casualty Loss
879
The respondent also disallowed an investment tax credit of $139 for 1974 and increased petitioners' 1973 income by $500 to reflect additional partnership income. Geraldine is a registered nurse who completed a 3-year nursing school program at St. Francis Hospital, Evanston, Illinois in 1955, at which time she received a registered nurse certificate. Geraldine then worked full-time as a registered nurse at the University of Chicago clinics until September 1956. From September 1956 until October 1957, she worked full-time as a registered nurse for the United States Air Force. During October of 1957 she quit her job in order to begin raising a family. Between October 1957 and July of 1975 Geraldine was never employed full-time as a registered professional *363 nurse and did not engage in the practice of nursing with the following exceptions: (1) During the summer of 1970, she was employed part-time as a nurse in a doctor's office, and (2) for approximately 1 month during the spring of 1972 she provided private duty nursing care, without pay, for her hospitalized father. Geraldine was licensed as a registered nurse by the State of New Jersey for the year ending December 31, 1971, and was licensed as a registered professional nurse by the State of Illinois for an undisclosed period ending May 1, 1974. Geraldine enrolled at Trinity College as a full-time student in September of 1972. She graduated in May of 1975 with a bachelor of arts degree, having majored in biology. On her application to Trinity College, she stated that she was planning to prepare for a vocation in medicine and that the factor which influenced her the most to attend Trinity College was the desire for a biology degree in connection with her medical studies. In furtherance of this objective, she applied to 10 medical schools for admission during October of 1974. [2] *364 Since July of 1975, Geraldine has worked full-time as a registered professional nurse. He training and the certification received in 1955 qualified petitioner for the job she held from July 1975 to June 1976 at Highland Park Hospital, Highland Park, Illinois. Petitioners' Federal income tax returns for 1973 and 1974 disclose Geraldine's occupation to be that of a housewife and student. Petitioners deducted automobile expenses on their Federal income tax returns as follows: $1,850 in 1973, $5,833 in 1974 and $5,621 in 1975. These deductions were claimed as incidents of Geraldine's attendance at Trinity College. Although the 1973 return states no percentage of business use, the 1974 and 1975 returns claim a business usage for the automobile of 83-1/3 percent and 75 percent, respectively. Petitioners also claimed an investment tax credit with respect to the automobile on their 1974 Federal income tax return. During *365 1973, John was a law partner in the firm of Chadwell, Kayser, Ruggles, McGee and Hastings of Chicago, Illinois. During 1973, the firm paid a $500 entrance fee for John to join the University Club of Chicago, a private club. The entrance fee is a one-time expenditure which entitles the payor to membership in the club as long as he continues to pay the club's annual dues. The club's by-laws provide that termination of membership by death, resignation, expulsion or otherwise shall release all of the member's right, title and interest in the property and assets of the club. Following an audit of John's law firm, the respondent disallowed the partnership's deduction of this $500 entrance fee. The partnership agreed to its disallowance. The respondent has alleged in his notice of deficiency that petitioners should have reported this amount as additional partnership income on their 1973 Federal income tax return. Petitioners' automobile was involved in an accident during September of 1975. The total cost of repairs shown on receipts furnished by the petitioner was $1,724.05. Of this amount, petitioners' insurance company paid $1,474.05, the difference being the deductible amount of $250 *366 which petitioners actually paid. Petitioners also paid $1,166.90 for the use of rental cars. Petitioners' 1975 Federal income tax return showed a loss before insurance reimbursement of $2,500 and insurance reimbursement of $1,521. After subtracting the $100 for the limitation contained in section 165(c)(3), petitioners claimed a casualty loss deduction of $879. In connection with the Emergency Wage/Price Stabilization Program, John, an attorney, established an office in his home. While petitioner's law firm did not require him to maintain such an office in his home, it did recommend that he do so in connection with the Stabilization Program. Subsequent to that program, John used the office primarily to avoid travel to and from his office in downtown Chicago on days when he visited clients close to his home. The office was also useful for evening and weekend work. John's law firm provided him an office at the firm which he could use any day or night. In fact, John only used his home office an average of 1 day a week. The office was located in a former bedroom on the second floor of his home. It contained normal office furnishings. The office was used for no purpose other *367 than John's business. OPINION Issue 1 Educational Expenses
This issue involves the determination of whether Geraldine's educational expenses are deductible. Geraldine was a full-time student at a 4-year college commencing in September of 1972 and ending in May of 1975, at which time she was awarded a bachelor of arts degree with a major in biology. Geraldine's background prior to entering college was that of a registered nurse, having completed a 3-year nursing school program in 1955. She worked full-time as a registered nurse from 1955 until 1957, at which time she began raising a family. Except for two part-time nursing jobs (one of which was without pay for a family member) Geraldine did not work again until following her graduation in 1975. Geraldine's application to college indicated a desire to seek admission to medical school. During her final year of college, she in fact applied to 10 medical schools. She later sued two of those schools for discriminatory admissions policies, in a further effort to gain entrance. Since her graduation from college, Geraldine has worked full-time as a registered nurse. The threshold issue is whether or not these expenses were incurred *368 in carrying on a trade or business. Section 162(a) allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *". Section 1.162-5(a), Income Tax Regs., provides for the deduction of certain educational expenses as ordinary and necessary trade or business expenses. Thus in order to prevail, petitioner must show that she is engaged in a trade or business. Whether a taxpayer is engaged in a trade or business is a question of fact. Corbett v. Commissioner,55 T.C. 884, 887 (1971). Generally, in order for an expenditure to be deductible as a business expense, the expenditure must relate to activities which constitute the present carrying on of an existing business. Corbett v. Commissioner,supra at 887. This is not to say that only students who work in a related capacity while attending school are entitled to the deduction. One may qualify for the deduction so long as he can show that he was engaged in some trade or business prior to starting his education and intends to return to that trade or business. Reisinger v. Commissioner,71 T.C. 568, 572 (1979). It is undisputed that the taxpayer entered *369 the business of nursing subsequent to graduation. However, taxpayer has failed to show the existence of a trade or business prior to entering college. Geraldine stopped working as a nurse in 1957 in order to raise a family. During the 15 years thereafter she was employed only twice; and then only for short periods in a part-time capacity. Petitioners rely heavily on Furner v. Commissioner,393 F.2d 292 (7th Cir. 1968), revg. 47 T.C. 165 (1966). That case is clearly distinguishable from the present case in that Furner was only out of work for 4 months prior to beginning her studies; and she only resigned her job initially because she could not obtain a leave of absence. In other words, she terminated her employment for the purpose of completing her studies. Petitioner here left nursing 15 years prior to enrollment in the pre-medical school program for the purpose of raising a family. Petitioner certainly did not cease practicing her profession as a nurse in order to return to school. In Reisinger v. Commissioner,supra, the taxpayer left her nursing position in 1969 and merely stopped working until 1974 when she enrolled at Johns Hopkins. The Court noted that a temporary cessation *370 of employment does not always indicate termination of a trade or business, and then went on to hold that she was not entitled to any deduction since she was not engaged in the trade or business of nursing. In the present case, petitioner's abandonment is for a much longer period of time and there is no evidence of an attempt to secure anything more than part-time employment during those intervening years. "Mere membership in good standing in a profession does not constitute carrying on a trade or business." Reisinger,supra, at 572. Petitioners appear to realize this and in effect argue that full-time study without any concurrent employment amounts to carrying on a trade or business. It is difficult to understand how petitioners can consider college studies to be a trade or business, much less to equate such with practicing as a registered nurse. That Geraldine did not consider herself to be a nurse during 1973 and 1974 is demonstrated by the fact that she listed her occupation on her Federal income tax returns for those years to be that of a student and housewife. Petitioners also appear to find hope for their cause in section 183. [3] *372 *373 This provision restricts the deduction of expenses *371 connected with activities not engaged in for profit. Section 183(d) creates a presumption [4] *374 at an activity is engaged in for profit if the gross income derived from the activity for 2 or more of the taxable years in the period of 5 consecutive taxable years exceeds the deductions attributable to such activity. Even assuming arguendo that section 183 has any bearing on this case, the record before us reveals no basis on which this Court could apply the presumption. But section 183 is really of no relevance for, in any event, a finding that an activity was engaged in for a profit merely allows the taxpayer to avoid the restrictions of section 183. Section 183 does not independently authorize a deduction for expenses related to activities engaged in for profit. Issue 2 Automobile Expenses and Investment Tax Credit
Petitioners claimed a deduction for certain automobile expenses. The only evidence of the actual use of this vehicle is John's testimony that it was used approximately 20 percent for his business related travel and the balance by his wife for travel in connection with her educational courses. We have found that Geraldine was not engaged in a trade or business at the time she was attending college. We further find that she was not engaged in any income-producing activities at that time. Therefore, any automobile expenses she may have incurred in attending school are not deductible under sections 162 or 212. They are purely personal expenses and as such not deductible under section 262. As to the 20 percent John claimed to have used the vehicle in his own business, petitioner has the burden of proving to what extent his automobile expenses were incurred for business or *375 personal purposes. Michaels v. Commissioner,53 T.C. 269, 275 (1969); see section 1.162-17(d), Income Tax Regs. Petitioner has presented no substantiation for his business use of the vehicle. Thus no portion of the automobile expenses may be deducted. The petitioners also claimed an investment tax credit in 1974 due to the purchase of an automobile. Section 38 allows a credit against income taxes for certain depreciable property. Section 48(a) defines "section 38 property" to include only property with respect to which depreciation (or amortization) is allowable. Section 167(a) allows a depreciation deduction only for property used in the trade or business or held for the production of income. Since petitioner has failed to show that the automobile was utilized for either purpose, it is not "section 38 property" and no investment tax credit is allowable. Issue 3 Entrance Fee
Petitioners do not dispute respondent's designation of the $500 entrance fee as additional partnership income. Rather they claim entitlement to an offsetting deduction of $500 for the entrance fee as a business expense. The entrance fee is assessed but once. Its benefits last so long as petitioner remains *376 a member of the club. It thus has an indefinite useful life lasting beyond the taxable year of payment. Mercantile National Bank at Dallas v. Commissioner,30 T.C. 84, 95 (1958), affd. on another issue, 276 F.2d 58 (5th Cir. 1960). Petitioners argue that the entrance fee is merely an initial charge to offset the expenses of processing his application and acceptance. They feel that no goodwill or capital asset is acquired since the annual dues are as much a precondition for the following year's dues as is the entrance fee. It is true that the entrance fee, once paid, is nonrecurring in that petitioner cannot be called upon to pay it again; nor is it any longer possible for his membership to be terminated for failure to pay it. Yet the simple fact that an expenditure is made in a single payment does not automatically cause classification as a currently deductible expense. Indeed, the usefulness of the payment here in question may outlast the year of payment merely because to the extent it exceeds the actual costs of initial processing petitioner is not called upon to pay it again. Petitioners have introduced no evidence that the fee covers solely the actual costs incurred due to *377 his application in the taxable year of payment. In Grace National Bank of New York v. Commissioner,15 T.C. 563 (1950); affd. per curiam, 189 F.2d 966 (2d Cir. 1951), the taxpayer's admission fee covered a membership in an association which could not be sold or transferred and no part of the admission fee was returnable to the member. Since we feel that through the entrance fee John has acquired a benefit lasting for the duration of his membership without regard to the lack of any benefit upon termination, we hold as we have in Grace,supra, at 565, that the entrance fee is a capital expenditure rather than an ordinary and necessary business expense. Issue 4 Casualty Loss Deduction
Petitioners' automobile was wrecked in September of 1975. Repairs were made and petitioners were reimbursed by their insurance company except to the extent of a $250 deductible. Petitioners also paid $1,166.90 to secure the use of a rental car. Section 165(a)[5] generally allows a deduction for any loss sustained during the taxable year and not compensated for by insurance or otherwise. Section 165(c) limits the deduction of such losses; but section 165(c)(3) allows to individuals a deduction for losses *378 of property not connected with a trade or business where the loss is due to a casualty (subject to the $100 limitation). The regulations [6] state that the amount allowable as a deduction for the loss shall be the lesser of the fair market value of the property immediately before the casualty reduced by the fair market value of the property immediately after the casualty or the adjusted basis of the property prescribed by section 1.1011-1, Income Tax Regs. , for determining a loss. The regulations provide two alternative methods for determining this valuation. The first method *379 requires a competent appraisal of the fair market value. [7] The record here reveals no evidence of such competent appraisal other than petitioners' testimony as to a range of values which information he acquired from the dealer who repaired the car, his own insurance company, and from a personal examination of the blue book listing for the car. No testimony or documentation was received from any of these sources. We believe that the requirement of a competent appraisal was not met with regard to this car. The regulations provide an alternative method of valuation based on the cost of repairs. The taxpayer, must show that: (a) the repairs are necessary to restore the property to its condition immediately before the casualty, (b) the amount spent for such repairs is not excessive, (c) the repairs do not care for more than the damage suffered, and (d) the value of the property after the repairs does not as a result of the repairs exceed the value of the property before the casualty. [Sec. 1.165-7(a)(2)(ii), Income Tax Regs.] There has been no showing by petitioners as to any of these points.No evidence has been put forth as to the condition of *380 the vehicle prior to the accident. Petitioner himself failed to testify as to this critical factor. Since petitioners have failed to establish a valuation for the amount of their loss, no deduction is allowable under section 165. Issue 5 Home Office Expense
John used a portion of his home for an office approximately 1 day per week in order to avoid travel time when visiting clients located closer to his home than his office. His law firm did not require him to do so. The law firm did provide John with an office at the firm that he could use at any time. We hold that John's home office expenses were nondeductible personal expenditures under section 262. [8] The expenses were incurred for his personal convenience and not as a requirement of his employer. To the contrary, John's employer provided him with an office which was always at his disposal. Petitioners urge that his home office was useful and appropriate in that it eliminated unnecessary and unproductive travel time. Many expenses, such as the cost *381 of commuting which petitioner was trying to avoid, are useful and possibly even necessary to one's employment, but they are not deductible under section 162(a) as they are personal expenses. Joel A.Sharon,66 T.C. 515, 524 (1976); affd.per curiam, 591 F.2d 1273 (9th Cir. 1978). Decision will be entered for the respondent.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, and in effect during the years in issue.↩
2. Geraldine brought suit against two of the universities alleging that she had been denied admission due to policies which discriminated against her on the basis of her age and her sex. The United States Supreme Court has held that the petitioner has a right to maintain a private cause of action against the universities. Cannon v. University of Chicago,441 U.S. 677↩ (1979).
3. SEC. 183. ACTIVITIES NOT ENGAGED IN FOR PROFIT. (a) GENERAL RULE.--In the case of an activity engaged in by an individual * * * is such activity is not engaged in for profit, no deduction attributable to such activity shall be allowed under this chapter except as provided in this section. (b) DEDUCTIONS ALLOWABLE.--In the case of an activity not engaged in for profit to which subsection (a) applies, there shall be allowed-- * * * (c) ACTIVITY NOT ENGAGED IN FOR PROFIT DEFINED.--For purposes of this section, the term "activity not engaged in for profit" means any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212. (d) PRESUMPTION.--If the gross income derived from an activity for 2 or more of the taxable years in the period of 5 consecutive taxable years which ends with the taxable year exceeds the deductions attributable to such activity (determined without regard to whether or not such activity is engaged in for profit), then, unless the Secretary establishes to the contrary, such activity shall be presumed for purposes of this chapter for such taxable year to be an activity engaged in for profit. * * * (e) SPECIAL RULE.-- (1) IN GENERAL.--A determination as to whether the presumption provided by subsection (d) applies with respect to any activity shall, if the taxpayer so elects, not be made before the close of the fourth taxable year (sixth taxable year, in the case of an activity described in the last sentence of such subsection) following the taxable year in which the taxpayer first engages in the activity. * * * (2) INITIAL PERIOD.--If the taxpayer makes an election under paragraph (1), the presumption provided by subsection (d) shall apply to each taxable year in the 5-taxable year * * * period beginning with the taxable year in which the taxpayer first engages in the activity, if the gross income derived from the activity for 2 or more of the taxable years in such period exceeds the deductions attributable to the activity (determined without regard to whether or not the activity is engaged in for profit). (3) ELECTION.--An election under paragraph (1) shall be made at such time and manner, and subject to such terms and conditions, as the Secretary may prescribe. ↩
4. Geraldine has filed with the respondent a request to make an election under sec. 183(e)(1), I.R.C. 1954, for the tax years here under consideration. Insofar as the record reveals, the respondent has not yet acted on her request. This election merely postpones the determination of whether the presumption provided by sec. 183(d), I.R.C. 1954, applies until after the end of the fourth taxable year following the taxable year in which the taxpayer engages in the activity. In view of the fact that the presumption cannot help the taxpayer in this case as we find that Geraldine was not engaged in a trade or business under sec. 162(a), I.R.C. 1954↩, without regard to any profit motive or lack thereof, it is of no consequence whether the election is available to Geraldine.
5. SEC. 165. LOSSES. (a) GENERAL RULE.--There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(c) LIMITATION ON LOSSES OF INDIVIDUALS.--In the case of an individual, the deduction under subsection (a) shall be limited to-- * * *
(3) losses of property not connected with a trade or business, if such losses arise from fire, storm, shipwreck, or other casualty, or from theft. A loss described in this paragraph shall be allowed only to the extent that the amount of loss * * * exceeds $100. * * *↩
6. Sec. 1.165-7(b)(1), Income Tax Regs.↩
7. Sec. 1.165-7(a)(2)(i), Income Tax Regs.↩
8. We point out that that tax years involved here, 1974 and 1975, predate the passage of sec. 280A which deals with expenses in connection with the business use of one's home.↩