CLIFF C. DAMRON and ELAINE E. DAMRON, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Damron v. Commissioner
Docket No. 4662-80.
United States Tax Court
T.C. Memo 1983-451; 1983 Tax Ct. Memo LEXIS 336; 46 T.C.M. (CCH) 903; T.C.M. (RIA) 83451; August 1, 1983. *336 P, a pilot in the Air Force from 1968 through 1972, took flight training courses in 1976. He also paid dues to the Future Airline Pilots Association in 1976. From 1973 until 1977, P sought but was unable to find work as a commercial pilot. He held other jobs during that period. Held, P was not carrying on the trade or business of an airline pilot in 1976 and therefore is not entitled to an educational expense deduction for amounts expended on flight training and related travel and lodging. Held,further, P is not entitled to deduct dues paid to the FAPA in 1976 because he was not carrying on the business of an airline pilot. Sec. 162(a), I.R.C. 1954. Cliff C. Damron and Elaine E. Damron, pro se. Donald *337 W. Hicks, Sr., for the respondent. SIMPSON
MEMORANDUM FINDINGS OF FACT AND OPINION SIMPSON, Judge: The Commissioner determined a deficiency of $751 in the petitioners' Federal income tax for 1976. The issues for decision are: (1) Whether expenses incurred by Mr. Damron for flight training are deductible as educational expenses; (2) if such expenses are so deductible, whether the deduction must be reduced to the extent Mr. Damron received nontaxable reimbursement for such expenses from the Veterans Administration; and (3) whether dues paid by Mr. Damron to the Future Airline Pilots Association are deductible as a trade or business expense. FINDINGS OF FACT Some of the facts have been stipulated, and those facts are so found. The petitioners, Cliff C. and Elaine E. Damron, husband and wife, resided in Lewisville, Tex., at the time they filed their petition in this case. They filed their joint Federal income tax return for 1976 with the Internal Revenue Service in Ogden, Utah. They filed a joint amended Federal income tax return for 1976 with the Internal Revenue Service in Austin, Tex. Mr. Damron will sometimes be referred to as the petitioner. *338 Mr. Damron graduated from Arizona State University in January 1968. Upon his graduation, he entered the United States Air Force (USAF), where he received pilot training. During his tour of active duty, Mr. Damron served as a pilot in C-141 aircraft, a 4-engine jet, for more than 2300 hours. In December 1972, he was honorably discharged from the USAF. In 1973, he was issued a commercial pilot license with instrument rating based on his military training and service. Following his discharge, Mr. Damron began working in a saw mill business with his father-in-law in the vicinity of Prescott Forest, Ariz., where he continued to work until September 1973. From about September 1973 to September 1974, he worked as an independent insurance dealer in Phoenix, Ariz. He was employed in the pharmaceutical field from September 1974 until September 1975. In September 1975, he was employed by A & G Engineering as a management consultant and continued working there until October 1976. Thereafter, he was unemployed until June 1977. Mr. Damron first applied for employment in the airline industry in June 1973. He continued to apply to, and to update his applications with, the major airlines *339 through 1976. In 1975, he traveled to the West Coast to apply in person at several airline offices. Mr. Damron was not employed by any airline until June 1977, at which time he was interviewed and hired by Braniff International Airline (Braniff). The Federal Aviation Administration (FAA) issued first-class medical certificates to Mr. Damron in September 1974, July 1975, and August 1976. Such a certificate is a prerequisite to employment as a second officer (flight engineer) with virtually every major airline. In August 1976, Mr. Damron purchased aircraft time for "aircraft proficiency" to maintain license currency and for a biennial flight review which is required by the FAA. From October through December 1976, he expended money for four flight training courses. The total of the tuitions and fees for these courses was $3,775.33. In 1976, Mr. Damron applied to the Veterans Administration (VA) for an educational assistance allowance under 38 U.S.C. sec. 1677 (1976). In 1977, he received reimbursement from the VA at the rate of 90 percent of the charges for tuitions and fees. The reimbursement amounted to $3,394.80. Mr. Damron also incurred travel *340 and lodging expenses relating to the four flight training courses totaling $807. In 1976, he also paid $30 in dues to the Future Airline Pilots Association (FAPA). He received no reimbursement for the dues or for the expenses of travel and lodging. On their amended Federal income tax return for 1976, the petitioners claimed an educational expense deduction for the total tuitions and fees for the flight training courses and for the related travel and lodging expenses. They also claimed a deduction for the dues paid to FAPA. In his notice of deficiency, the Commissioner disallowed the deductions on the grounds that Mr. Damron was not in the trade or business of a pilot in 1976 and that the training qualified him for a new trade or business. In the alternative, the Commissioner advanced the position that, in any event, the petitioners are not entitled to an educational deduction to the extent that the educational expenses were reimbursed by the VA. OPINION The first issue for decision is whether Mr. Damron was in a trade or business in 1976 with respect to which he is entitled to an educational expense deduction for amounts that he expended in such year for flight training *341 courses and related travel and lodging. [1]Section 162(a) of the Internal Revenue Code of 1954[2] provides that "There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business" (emphasis added). Whether the taxpayer is engaged in a trade or business in a particular year, and the nature of such business, are questions of fact. Corbett v. Commissioner,55 T.C. 884, 887 (1971). The burden is on the petitioners to prove that they are entitled to a business expense deduction. Rule 142(a), Tax Court Rules of Practice and Procedure; Welch v. Helvering,290 U.S. 111, 115 (1933). In order to meet this burden, petitioners must show that the expenditures in question relate to activities which amount to the present carrying on of a business. Reisinger v. Commissioner,71 T.C. 568, 572 (1979); Koons v. Commissioner,35 T.C. 1092, 1100 (1961). *342 A taxpayer may be "carrying on" a trade or business even though unemployed at the time the expenditures are incurred. An important factor in determining whether a taxpayer is still in a trade or business during a period of unemployment is whether the taxpayer's absence from such trade or business is "temporary" or "indefinite." See, e.g., Furner v. Commissioner,393 F. 2d 292 (7th Cir. 1968), revg. 47 T.C. 165 (1966); Corbett v. Commissioner,supra;Haft v. Commissioner,40 T.C. 2 (1963). [3] In Haft, the taxpayer was found to be still in the trade or business of a salesman of costume jewelry in 1958 although unemployed during that year. The taxpayer had been a costume jewelry salesman from 1932 until September 1957. He actively sought new employment as a costume jewelry salesman during 1957 and 1958, but did not find work until 1962. This Court allowed a deduction for the amounts spent by the taxpayer in 1958 to entertain and to make gifts to former customers in order to maintain their goodwill during a period of what he thought would be temporary unemployment. We compared this situation to "that of *343 a worker who is temporarily unemployed and who continues to pay his union dues while looking for another job. In such situations the taxpayer should be allowed to deduct those expenses properly referable to his trade or business which, we hold, did not cease to exist during a reasonable period of transition." 40 T.C. at 6; emphasis added. Similarly, in Furner v. Commissioner,supra, the Seventh Circuit held that a secondary school teacher, who resigned from her teaching position when she could not get a leave of absence to attend graduate school full time for a year, and who took a teaching job in a different school district after she completed her studies, was in the trade or business of being a teacher while in graduate school. In Ford v. Commissioner,56 T.C. 1300 (1971), affd. per curiam 487 F. 2d 1025 (9th Cir. 1973), this Court decided to follow the position of the Seventh Circuit. On the other hand, where the taxpayer leaves his employment *344 with the intention of resuming work in that trade or business at some indefinite time in the future, he is not considered to be "carrying on" such trade or business during that period.For instance, in Owen v. Commissioner,23 T.C. 377 (1954), a Government employee residing and working in Washington, D.C., from 1944 to 1954 made expenditures in 1947 to maintain a law office in North Dakota in anticipation of resuming his law practice at some indefinite future time after completing his Government service. We held that the taxpayer was not carrying on the trade or business of practicing law in 1947. See also Reisinger v. Commissioner,supra;Corbett v. Commissioner,supra.
Mr. Damron testified that when he left the USAF, he intended to become a commercial pilot, and he actively sought such employment from June 1973 until he secured the employment with Braniff in 1977. We accept his contention that he wanted to be a commercial pilot throughout such period and that he accepted other employment only because he could not secure a position as a pilot. Nevertheless, we must conclude that in 1976, Mr. Damron was not carrying *345 on the trade or business of a commercial pilot.Unlike Haft, the expenses at issue were not incurred shortly after his leaving his employment as a pilot with the USAF. He was not actually employed as a pilot for a period of more than 4 years, and when the educational expenses were incurred, he had been away from such employment for more than 3 years. Though Mr. Damron wanted to be a commercial pilot throughout those years, the fact is that he did not secure a pilot position for more than 4 years. Moreover, during such years, he was engaged in several other businesses. Furthermore, the facts that the petitioner possessed a commercial pilot license, that he renewed his first-class medical certificate regularly, and that he was a member of the FAPA are not sufficient to support a finding that he was actively engaged in the trade or business of a pilot. It is a well established principle that being a member in good standing of a profession is not tantamount to "carrying on" that profession for purposes of section 162(a). Wassenaar v. Commissioner,72 T.C. 1195 (1979); *346 Corbett v. Commissioner,supra;Owen v. Commissioner,supra.
The petitioners' reliance on our decision in Picknally v. Commissioner,T.C. Memo. 1977-321, is misplaced. In Picknally, we held that a full-time doctoral degree student was carrying on the trade or business of a teacher in 1971 even though he had resigned his position as an elementary school principal [4] in 1968 in order to take the course. Factors that led to such holding included the custom of teachers to leave teaching temporarily to take such courses, the direct relationship between the taxpayer's previous employment and the course work, the definite rather than open-ended duration of the degree program, and the taxpayer's lack of other, nonteaching, employment while studying. Such factors do not exist in the present case. In addition, the fact that the taxpayer was unable to find teaching or administrative employment after 1971 (when his course work was completed) had little or no bearing on whether the taxpayer was in the trade or business of a teacher in 1971. [5] Consequently, Picknally is distinguishable. *347 Because Mr. Damron was not engaged in the trade or business of a commercial pilot in 1976, we hold that he is not entitled to deduct the cost of the flight training courses and the related travel and lodging expenses. Wassenaar v. Commissioner,supra;Corbett v. Commissioner,supra. Our holding makes it unnecessary to decide whether, as the Commissioner contends, these courses qualified the petitioner for a new trade or business as a flight engineer. See sec. 1.162-5(b), Income Tax Regs. Such holding also makes it unnecessary to decide whether any otherwise allowable deduction for educational expenses must be reduced to the extent that Mr. Damron received a nontaxable reimbursement of such expenses. The remaining issue for decision is whether Mr. Damron is entitled to deduct the dues paid to FAPA as a business expense under section 162(a). In order to be deductible, dues to professional associations must be directly related to the carrying on of a trade or business. Sec. 162; sec. 1.162-15(c), Income Tax Regs. *348 ; Brooks v. Commissioner,30 T.C. 1087 (1958), revd. on other grounds 274 F. 2d 96 (9th Cir. 1959); Boehm v. Commissioner,35 B.T.A. 1106 (1937); see Andress v. Commissioner,51 T.C. 863 (1969), affd. 423 F. 2d 679 (5th Cir. 1970). On the facts of this case, we have held that Mr. Damron was not in the trade or business of a commercial pilot in 1976. During 1976, he was employed as a management consultant until October and was unemployed thereafter. The petitioners have made no attempt to prove that the dues were ordinary and necessary expenses related to that trade or business. Therefore, we hold that the dues are not deductible. Decision will be entered for the respondent.
Footnotes
1. The Commissioner concedes that if the amounts expended for the courses are deductible educational expenses, then the amounts expended for related travel and lodging are also deductible. ↩
2. All statutory references are to the Internal Revenue Code of 1954 as in effect during the year in issue, unless otherwise indicated.↩
3. Sherman v. Commissioner,T.C. Memo. 1977-301↩.
4. Sec. 1.162-5(b), Income Tax Regs.↩, treats the positions of teacher and school administrator as a single "trade or business." 5. This approach was also taken in Haft v. Commissioner,40 T.C. 2↩ (1963), where we determined the taxpayer's status in 1958, the year after he became unemployed, and not his status in later years of unemployment.