Ashby H. CANTER and Florence
G. Canter

v.

The UNITED STATES.
No. 24–62.

United States Court of Claims.
Dec. 17, 1965.

---

Davis, J., dissented.

Thomas A. Ziebarth, Washington, D. C., attorney of record for plaintiff. Shipley, Akerman & Pickett, Washington, D. C., of counsel.

Richard J. Boyle, Washington, D. C., with whom was Acting Asst. Atty. Gen., Richard M. Roberts, for defendant. C. Moxley Featherston, Lyle M. Turner, and Philip R. Miller, Washington, D. C., of counsel.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS and COLLINS, Judges.

COLLINS, Judge.

During 1960, Florence G. Canter, one of the joint petitioners, was a full-time student of nursing at the University of Maryland. In their 1960 Federal income tax return, petitioners treated as a deduction expenses related to Mrs. Canter's education. (Hereafter, the term "plaintiff" will refer to Florence G. Canter.) The deduction was disallowed by the Internal Revenue Service, and the present suit followed.

Section 162 of the Internal Revenue Code of 1954 states, in part, that: "There shall be allowed as a deduction all

the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *." The section and the regulations [1] interpreting it provide the basis for plaintiff's claim. One of defendant's assertions is that plaintiff cannot possibly be entitled to a deduction under section 162 for the reason that, as of 1960, she was not "carrying on any trade or business."

The pertinent facts are set forth, infra, in the findings of fact and need not be restated in this opinion. Based upon the record in this case, it is our conclusion that the expenses of plaintiff's education in 1960 are not deductible. The crucial facts are that (1) on August 26, 1958, after having been on leave of absence since February 1, 1958, plaintiff resigned from her position with the U. S. Public Health Service and (2) during the year 1960, plaintiff had no employment.

We cannot accept the argument of plaintiff that, during the year in question, she was "on a temporary leave of absence." [2] It does appear that plaintiff's resignation was attributable to the fact that, under the existing conditions, the Public Health Service could not extend her leave of absence beyond 9 months. However, the fact remains that, having been given a choice between retaining her job and continuing as a full-time student, plaintiff elected the latter course.

On August 26, 1958, plaintiff's employment with the Public Health Service was terminated by her resignation. No longer did she have the right to return to her position there. Furthermore, plaintiff has failed to prove the existence of any informal understanding between her and the Public Health Service regarding future employment. The year in issue began some 16 months after plaintiff had resigned. Perhaps, in 1960, plaintiff did hope that, after completing her university training, she would be able to obtain a new position at the Public Health Service. [3] However, this desire on plaintiff's part is not a sufficient link with the Public Health Service. On the basis of the record before us, we hold that, by 1960, plaintiff was not "on temporary leave of absence" either in form or in substance. By 1960, plaintiff's status was simply that of a former employee of the Public Health Service. Under these circumstances, there is no reasonable basis for stating that plaintiff's relationship, in 1960, with the Public Health Service constituted "carrying on a business."

Two other arguments of plaintiff must also be rejected. According to plaintiff, she was actively engaged in the practice of her profession during the year in question. The record does indi-

---

1. Treas.Reg. § 1.162–5, which deals with expenses for education, was promulgated in 1958. Relevant parts of the regulation are as follows:

   "(a) Expenditures made by a taxpayer for his education are deductible if they are for education (including research activities) undertaken primarily for the purpose of:

   "(1) Maintaining or improving skills required by the taxpayer in his employment or other trade or business * * *
   *   *   *   *   *
   "Whether or not education is of the type referred to in subparagraph (1) of this paragraph shall be determined upon the basis of all the facts of each case. * * *

   "(b) Expenditures made by a taxpayer for his education are not deductible if they are for education undertaken pri-

marily for the purpose of obtaining a new position or substantial advancement in position or primarily for the purpose of fulfilling the general educational aspirations or other personal purposes of the taxpayer. * * *
   *   *   *   *   *
   "(d) If a taxpayer travels away from home primarily to obtain education the expenses of which are deductible under this section, his expenditures for travel, meals, and lodging while away from home are deductible. * * *"

2. The significance of being on temporary leave of absence is dealt with in Rev.Rul. 60–97, 1960–1 Cum.Bull. 69, 70. Portions of this ruling are quoted in footnote 5, infra.

3. See footnote 6, infra.

cate that plaintiff did some nursing at a state hospital and at a psychiatric institute. However, these activities do not satisfy the requirements of section 162. The nursing which plaintiff performed was part of her academic program; it did not result in income to her nor was it related to employment.[4] Secondly, the fact that plaintiff continued to be a nurse cannot be determinative. Cf. Henry G. Owen, 23 T.C. 377, 380 (1954). The latter case indicates that the mere existence of professional status is not a sufficient basis for finding that the taxpayer is "carrying on a business." Owen did not involve educational expense, but, as defendant contends, the general principle of that case is relevant to the present one.

None of the cases cited by plaintiff dealt with factual circumstances like hers. The taxpayer in Cosimo A. Carlucci, 37 T.C. 695 (1962), acq., 1962-2 Cum.Bull. 4, was employed during the period in question; his classes were held at night. In John S. Watson, 31 T.C. 1014 (1959), nonacq., 1963-2 Cum.Bull. 6, the taxpayer was actively engaged in the practice of medicine. Thus, in each of these cases, it was clear that the taxpayer was carrying on a business during the years in which the expenses were incurred. A case which comes closer to the one at bar is Peggy A. King, 21 CCH Tax Ct.Mem. 495, P–H Mem. T.C. ¶62,093 (1962). Miss King was a teacher in the Fort Worth public school system. During part of the pertinent year, she was a full-time graduate student at Stanford University. She was permitted to deduct educational expenditures including those incurred at Stanford. However, during the months in question, Miss King was either under contract with the Fort Worth school system or on leave of absence. This is a material distinction between her situation and that (in 1960) of Mrs. Canter. The cases cited by plaintiff are fully in accord with the proposition that, before a person can qualify for a deduction under section 162, he must either be engaged in remunerative activity or have a definite connection, such as leave of absence, with a position. See Rev.Rul. 60–97.[5] As indicated above, by 1960, the ties between Mrs. Canter and her former job had been completely severed.

To summarize, we hold that plaintiff is not entitled to deduct the expenses in issue. If we had been called upon to determine the deductibility of the educational expenses incurred while plaintiff was on leave of absence, then, in all likelihood, it could have been said that the primary purpose of such expenditures was to "[maintain or improve] skills required by the taxpayer in * * * [her] employment or other trade or business." However, by 1960, plaintiff's situation had been altered considerably. Although

---

4. In McDonald v. Commissioner, 323 U.S. 57, 60, 65 S.Ct. 96, 89 L.Ed. 68 (1944), the majority stressed the principle that, in order to qualify for the business deduction, the expense must relate to the existing, as opposed to the future, occupation of the taxpayer. The Supreme Court held that certain campaign expenses were not deductible under Int.Rev. Code of 1939, § 23(a) (1) (A), ch. 619, § 121, 56 Stat. 798, 819 (1942).

The requirement of relation to an existing position is implicit in the regulations pertaining to educational expenses. See footnotes 1 and 5. Cf. Sandt v. Commissioner, 303 F.2d 111, 3 A.L.R.3d 825 (3d Cir. 1962); Namrow v. Commissioner, 288 F.2d 648 (4th Cir.), cert. denied, 368 U.S. 914, 82 S.Ct. 192, 7 L.Ed. 2d 132 (1961).

5. Rev.Rul. 60–97, 1960–1 Cum.Bull. 69, which pertains to expenses for education, provides, in part, as follows:

"A taxpayer who is not currently employed or is not otherwise actively engaged in a trade or business is not entitled to a deduction for the expenses of any education undertaken during such period of unemployment or inactivity. Therefore, if a taxpayer who has ceased to engage in employment or other business subsequently undertakes education or training preparatory to resuming engagement in such employment or other business, the cost of such education is not deductible. A taxpayer will not be considered to have ceased to engage in his employment or other business during an off-duty season, when he is on vacation, or when he is on temporary leave of absence. * * * *"

plaintiff continued in 1960 to improve her nursing skills, the necessary link between plaintiff and employment at the Public Health Service (or elsewhere) was absent. Therefore, we would not be justified in granting to plaintiff the deduction described in section 162 and the applicable regulations.

In reaching this conclusion, we are fully aware of the fact that plaintiff ultimately returned to Federal employment.[6] Undoubtedly, the Government benefited from her undergraduate and graduate training, for it rehired a better prepared and more capable employee. Nonetheless, these factors do not afford the basis for recovery by plaintiff. A decision favorable to plaintiff would represent not construction of section 162, but legislation on our part. There is much to be said in favor of providing for the deduction of expenses such as those incurred by plaintiff. This would be consistent with recent legislation to encourage advanced study and training, particularly in the fields of medicine, including nursing, and science.[7] However, the decision to create such a deduction must be made by Congress, not by a court. As sympathetic as we may be towards plaintiff for her commendable course of action, we cannot change existing law and regulations.

The petition is dismissed.

DAVIS, Judge (dissenting):

The court suggests, and I would hold, that Mrs. Canter's primary purpose was to maintain or improve her skills as a Public Health Service nurse—within the scope of Section 162 of the 1954 Code and Treas.Reg. § 1.162–5. On this record we should have no trouble concluding that her nursing studies were not undertaken for the excluded objectives of obtaining a new position or a higher grade, or of fulfilling general educational aspirations. The only controversial issue is whether she was employed or engaged in a trade or business in 1960, or whether she was at that time unemployed and wholly inactive in her profession.

Rev.Rul. 60–97, 1960–1 Cum.Bull. 69, 70, declares that "a taxpayer will not be considered to have ceased to engage in his employment or other business during an off-duty season, when he is on vacation, *or when he is on temporary leave of absence*" (emphasis added). To me, the concept of a "temporary leave of absence" must be seen functionally and realistically, not technically or formally. If Mrs. Canter had been permitted by the Public Health Service to remain on unpaid leave from that agency during 1960, she would, on the court's own theory, be entitled to the deduction she claims. Her status during that year was, to my mind, the same in substance, though not in form, as if she had been retained on the rolls without pay. She was, in effect, on "temporary leave of absence."

The clue to one of the meanings of a "temporary leave of absence" in the context of the educational deduction is given by the revenue ruling itself. One sentence says: "Therefore, if a taxpayer who has *ceased* to engage in employment or other business *subsequently undertakes* education or training *preparatory to resuming engagement* in such employment or other business, the cost of such education is not deductible" (emphasis added). This implies that the cessation of employment or business came about through some independent cause, and

6. In May 1963, almost 5 years after her resignation, Mrs. Canter again began working for the U.S. Public Health Service. However, it should be noted that approximately 9 months elapsed between her return to the Public Health Service and the receipt, in August 1962, of her master's degree. After completing her education, plaintiff worked for Montgomery County, Maryland. It was not until February 1963 that she requested reemployment at the Public Health Service.

7. See, for example, §§ 821, 822, of the Nurse Training Act of 1964, 78 Stat. 913, 42 U.S.C. §§ 297, 297a. Also, see the Heart Disease, Cancer, and Stroke Amendments of 1965, 79 Stat. 926, 42 U.S.C. §§ 299–299i, and the Health Professions Educational Assistance Amendments of 1965, 79 Stat. 1052 (codified in scattered sections of 42 U.S.C.).

was not directly for the purpose of studying, but that the individual then decided to use the free time for further training before re-entering the labor market. In that event the stopping of work is separate from and unrelated to the "subsequently undertaken" course of study and, conversely, the studying is related only to some *future* job or activity, not to the one which has already ceased. But a moderate interruption of active work for the specific purpose of taking courses connected with that work falls into a different class. Because the temporary ending of work is for the goal of returning to it with better qualifications, *that* job has not ceased; in substance, there is merely an intermission in activity for a special purpose (whatever may be the markings on the papers in the personnel office). If the person reasonably expects to resume his same employment (or work) and if he leaves it temporarily in order to undergo the training which will advance his ability to perform, he is, with respect to the educational deduction, "on temporary leave of absence" which suspends but does not cut off his employment. This understanding makes more sense, in my view, than an unquestioning reliance on the particular way the particular employer chooses to characterize his employees who leave temporarily for an interval of training.

There is no doubt that Mrs. Canter left her work at the Public Health Service solely in order to obtain a nursing degree. She resigned in 1958 only because agency policy forced her to do so. She testified that she planned to return to her Service job after she completed her schooling and there is no reason to doubt her word. The Service encouraged its nurses to take courses, and it is reasonable to infer from the record that the agency would re-hire her when an opening occurred even though it was not under any legal

obligation. Mrs. Canter knew, moreover, that she would return to the same grade level and that her training would not entitle her to a higher position. After her academic work she took a job for a few months outside of the Service, apparently because there was no immediate vacancy for her in the Service; she returned there after a little while, at the same grade she held in 1958. For the year 1960, all this adds up to a "temporary leave of absence"—a temporary suspension of work—as I conceive the term. Cf. King v. Commissioner, 21 CCH Tax Ct.Mem. 495, P–H Mem. T.C. ¶62,093 (1962).[1]

FINDINGS OF FACT

The court, having considered the evidence, the report of Trial Commissioner William E. Day, and the briefs and argument of counsel, makes findings of fact as follows:

1. The plaintiffs, Ashby H. and Florence G. Canter, are husband and wife. They filed a joint Federal income tax return for 1960, the year in issue.

2. Plaintiff, Florence G. Canter, is and has been a registered nurse since 1935. She received her nurses training at Bristol Hospital, Bristol, Connecticut. Plaintiff's course in nurses training at that hospital did not then include academic work. After working as a nurse at various hospitals, she then worked as a private practice nurse. In 1937, the plaintiff became interested in public health, enrolling at the College of William and Mary for the full-time Public Health Nursing Course which that college offered. Upon completion of that course in 1938, the plaintiff received a certificate in Public Health Nursing.

3. The plaintiff entered upon Government employment with the U.S. Public Health Service in May 1949 at a grade of GS–7. She continued in that employ-

---

1. There are work interruptions which are so protracted that they can no longer be designated "temporary", but that is not true here, so far as 1960 is concerned. A span of three years is not too long for a degree-seeking interruption.

Regular officers of the Army and the Navy used to be sent to law school as part of their military careers; they were only temporarily removed from their regular military pursuits.

ment until she resigned on August 26, 1958, after having been on an educational leave without pay status from February 1 to August 26, 1958.

4. The plaintiff's work as a Public Health Nurse during the employment described above was carried out in the nurses' stations at various Government office buildings. While so employed, the plaintiff took some evening courses at a branch of the University of Virginia. The testimony is not clear as to the extent of this activity, however.

5. It is clear from the record, however, that the plaintiff wanted to obtain a Bachelor of Science degree in Nursing. It is equally clear that the taking of further courses by nurses employed by the Public Health Service was encouraged by that office in its literature and by the supervisors of the nurses.

6. The plaintiff successfully passed an examination of the League of Nursing Education, which entitled her to 45 credits toward a degree in nursing. She needed an additional 28 credits to qualify for the degree.

7. On January 2, 1958, plaintiff requested a 9 months' educational leave of absence, the maximum amount allowable, beginning February 1, 1958, through November 1, 1958. That request was granted on January 3, 1958. Plaintiff had the right to return to work at any time prior to November 1, 1958. In February 1958, plaintiff enrolled as a full-time student at the University of Maryland in order to obtain the degree of Bachelor of Science in Nursing.

8. The plaintiff continued as a full-time student at the University of Maryland until June 1960 when she was awarded the degree of Bachelor of Science in Nursing.

9. Since her leave of absence could not be extended to allow her to complete the course, the plaintiff resigned from her position with the Public Health Service in August 1958.

10. In September 1960 the plaintiff began, as a full-time student, her graduate studies at the University of Maryland, leading to a master's degree in Psychiatric Nursing, which she completed in June 1962.

11. After receiving her master's degree, plaintiff went to work for Montgomery County, Maryland. In February 1963, she requested reemployment at the U.S. Public Health Service and, in May 1963, began working there.

12. The plaintiff received no earnings from employment through the period February 1958 until June 1962.

13. Plaintiffs claimed educational expense deductions of $892.43 on their 1960 Federal income tax return, $113 for Mr. Canter's expenses and $779.43 for Mrs. Canter's expenses. Of the $779.43, $299.63 was expended while plaintiff was earning her bachelor's degree, and $479.80 related to expenses incurred while studying for her master's degree. Those expenditures were as follows:

| Item: | Semester Incurred | |
| --- | --- | --- |
| | Spring | Fall |
| Tuition | $126.00 | $150.00 |
| Books | 32.84 | 25.40 |
| Room, board, and transportation | 131.68 | 304.40 |
| Miscellaneous | 9.11 | — |
| Totals | $299.63 | $479.80 |

The expenses for room, board, and transportation during the spring semester were incurred for travel to Baltimore to attend class once a week on Wednesday evenings, meals, and overnight lodging while there, travel on

**358**

Thursday mornings to College Park, and later travel back to her home in Falls Church, Virginia.

All of plaintiff's classes during the fall of 1960 were held in Baltimore. The $304.40 which plaintiff spent for room, board, and transportation covered the fares to Baltimore on Monday mornings, the cost of meals and room in Baltimore from Monday through Thursday, and return fares to her home in Falls Church, Virginia. Plaintiff has retained, and continues to use, the textbooks which she acquired while a student.

14. Plaintiffs' claimed deduction was disallowed by the Internal Revenue Service. They filed a formal claim on Form 843 for a refund of taxes paid on account of the disallowed educational expenses of Mrs. Canter. That claim was disallowed by letter, dated December 21, 1961, from the District Director, Internal Revenue Service, Richmond, Virginia, addressed to the plaintiffs.

### CONCLUSION OF LAW

Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiffs are not entitled to recover. The petition is dismissed.