Don Cornish and Monice C. Cornish v. Commissioner.
Cornish v. Commissioner
Docket No. 1454-68.
United States Tax Court
T.C. Memo 1970-51; 1970 Tax Ct. Memo LEXIS 310; 29 T.C.M. (CCH) 235; T.C.M. (RIA) 70051; February 26, 1970, filed. Don Cornish, pro se, 2540 N.E. 97th, St., Seattle Wash. G. Phil Harney, for the respondent. TANNENWALD
Memorandum Findings of Fact and Opinion TANNENWALD, Judge: Respondent determined a deficiency of $121.27 in petitioners' income tax for the year 1964. The sole issue for our determination is whether petitioners are entitled to deduct $630 [1] as an educational expense of Don Cornish while a full-time student at the University of Washington. *311 Findings of Fact Some of the facts are stipulated and are found accordingly. Petitioners are husband and wife who had their legal residence in Seattle, Washington, at the time of filing the petition herein. They filed a joint Federal income tax return for the taxable year 1964 with the district director of internal revenue, Seattle, 236 Washington. Monice C. Cornish is a party hereto only because she filed a joint Federal income tax return with her husband for the year 1964. References to petitioner shall be deemed to refer to Don Cornish. Petitioner's formal education was acquired as follows: School, college, university
Date attended
Little Rock High School
1931-1934
Phillips Exeter Academy
1934-1935
Yale University
1935-1936
Massachusetts Institute of Technology
1936-1937
Northwestern University
1938-1939
University of Washington
1960-1962
University of Washington
1963-1965
University of Arkansas
1969-present
Petitioner's status, while enrolled at the University of Washington, was as follows: Dates attended
Status
Sept. 1960-June 1961
Full-time employee; part-time student.
Sept. 1961-Aug. 1962
Part-time employee; full-time student.
Sept. 1963-Mar. 1965
Unemployed; full- time student.
*312 Petitioner was employed as follows through June 1963: Date
Position
Nov. 1939-Feb. 1940
Appliance salesman.
July 1940-Mar. 1942
U.S. Rubber Co., in engi- neering department.
Mar. 1942-Oct. 1943
Navy Department, on mag- netic mines.
Oct. 1943-Apr. 1945
Bendix Aviation, in re- search department spe- cializing in radio, ground speed indicators, and air navigation instruments.
Aug. 1945-Oct. 1945
Jordanoff Aviation Corp., in early warning sys- tems research.
Nov. 1945-Jan. 1948
Self-employed in attempt- ing to develop a me- chanical game called the "flix."
Feb. 1948-Oct. 1949
Stromberg-Carlson, in elec- tronics research on radio high-frequency circuits.
Nov. 1949-July 1950
Self-employed in perfect- ing and unsuccessfully attempting to sell his mechanical game.
Aug. 1950-Oct. 1954
Eastman Kodak, in devel- oping optics and vision instruments.
Oct. 1954-May 1955
Unemployed.
May 1955-Sept. 1955
Burroughs Laboratories, as a laboratory technician.
Sept. 1955-May 1956
Unemployed.
June 1956-Oct. 1957
Minneapolis-Honeywell, in development of aero- nautic instruments.
Nov. 1957-May 1958
Unemployed.
May 1958-June 1963
Boeing Company, as as- sistant analyst engaged in developing safety as- pects of the "Minute- man" missile.
*313 On May 20, 1963, petitioner was notified by his employer, the Boeing Company (hereinafter Boeing) that his salary would be reduced by $1,500 per annum as of the next payday, that his status would be changed from "regular permanent employee" to "employee on probation," and that Boeing would determine after six weeks whether petitioner's employment would be continued or terminated. Petitioner requested that this action be held in abeyance for one week so that he could complete five years of service with Boeing. This request was granted and petitioner in return agreed to, and did in fact, resign from Boeing in June 1963. When petitioner resigned his position at Boeing, he had neither a leave of absence nor a formal or informal agreement that Boeing would rehire him upon receipt of a degree in physics or mathematics. While employed at Boeing, petitioner was a member of the Society of Professional Engineers and Architects, but he had not received a degree from any college or university. In August 1963, petitioner satisfactorily completed the requirements for, and received a Bachelor of Science degree in physics from the University of Washington. In September 1963, petitioner enrolled *314 as a full-time student at the University of Washington for the purpose of obtaining a Bachelor of Arts degree in mathematics. Petitioner completed the requirements for this degree in August 1964 and in September 1964 similarly enrolled for a Master's degree in mathematics. All courses taken during 1964 were in the field of mathematics. Petitioner withdrew from the University in March 1965 without receiving a Master's degree. While enrolled at the University of Washington, petitioner was not employed as a teacher, instructor, professor, or graduate assistant nor did he receive financial assistance from that institution. Between March 1965 and July 1966, petitioner sought employment with various business organizations, including Boeing, but no offers were forthcoming, although he received several interviews. Petitioner was not offered a job by Boeing, because he was not qualified for the position then available. In July 1966, petitioner determined to spend a period of time pursuing scientific studies of interest to him, namely, relativity and the so-called four-color map problem. In February 1969, he enrolled in the 237 University of Arkansas as a candidate for a Master's degree *315 in mathematics. Aside from an insignificant amount of income derived from tutoring, petitioner has not worked as an employee since resigning from his position at Boeing. Ultimate Finding of Fact Petitioner was not engaged in any trade or business during the year 1964. Opinion The present controversy involves the deductibility of petitioner's expenses for completing a Bachelor's degree and beginning a Master's degree, both in mathematics. [2] Petitioner maintains that he has been in the trade or business of selling his scientific or technical services for almost 20 years and that, upon the termination of his employment at Boeing, he returned to school to maintain or improve his professional skills. Respondent's position is simply that petitioner was not engaged in any trade or business during the year in question and, alternatively, if petitioner was so engaged, his educational program was designed to meet the minimum educational requirements of future employers, making the educational expenses nondeductible pursuant to section 1.162-5, Income Tax Regs.
Petitioner's employment *316 with Boeing terminated in June 1963, and he had neither a leave of absence from, nor an understanding with regard to future employment at, Boeing. Immediately thereafter, in August 1963, he completed the requirements for a B.S. in physics at the University of Washington. He promptly began work on a B.A. in mathematics, which was completed in August 1964, and immediately thereafter enrolled in a program leading to a Master's degree in mathematics. Thus, his course of study encompassed work on two undergraduate degrees and one graduate degree. Petitioner withdrew from the university in March 1965 and attempted to obtain scientific or technical employment without success until the summer of 1966, when he determined to spend time studying relativity and the four-color map problem, which presumably occupied him until he enrolled at the University of Arkansas in February 1969. We must first resolve the threshold question whether petitioner was in fact engaged in a trade or business during 1964 within the meaning of section 162(a).[3] In essence, this involves a determination whether, on the one hand, petitioner's sojourn at the University of Washington represented a temporary hiatus in *317 his professional career as a physicist during which he intended to improve his skills or in fact did improve his skills in that capacity [4] or, on the other hand, petitioner's sojourn removed him from the trade or business of being a physicist and placed him in the category of a student for an indefinite period of time. Compare Rev. Rul. 68-591, 1968-2 C.B. 73. Under the first alternative, his expenses might well be deductible under the rationale of Furner v. Commissioner, 393 F. 2d Commissioner, 393 F. 2d 292 (C.A. 7, 1968), reversing 47 T.C. 165 (1965), which allowed a deduction for educational expenses to a teacher who resigned her teaching position for a period of one year in order to obtain a Master's degree, at the end of which period she resumed teaching in another school district, or of Harold Haft, 40 T.C. 2 (1963), where the taxpayer was held to have continued in the trade or business of being a salesman during a period when he was temporarily out of a job but actively seeking a new one. Under the second alternative, petitioner's expenses would at best be considered as having been made for the purpose of resuming his trade or business *318 at some future date under the rationale of Canter v. United States, 354 F. 2d 352 (Ct. Cl. 1965), which disallowed a deduction for educational expenses of an employee who left the United States Public Health Service for an indefinite period (which in fact lasted almost five years) to study nursing, or Henry G. Owen, 23 T.C. 377 (1954), which disallowed the deduction by a United States Government employee living in Washington, D.C., of the expenses of maintaining a law office in North Dakota. Compare also C. Fink Fischer, 50 T.C. 164, 171 (1968). *319 238 Although petitioner was not gainfully occupied as a physicist during 1964, he clearly regarded himself as a member of a profession encompassing the allied fields of applied physics and mathematics. But such an association standing alone, whether measured by subjective or objective standards, is insufficient to constitute a trade or business within the meaning of section 162. Cf. Henry W. Owen, supra. We recognize, of course, that petitioner withdrew from graduate school and sought employment in 1965 and 1966 and that, even though he was not successful, such activity tends to indicate that his educational sojourn in 1964 may have been temporary in character. But petitioner himself testified that these employment-seeking efforts were generated by family pressures and depletion of available funds. Consequently, we view those activities more as an aberration in his educational pursuits than as proof of a trade or business with the educational pursuits merely ancillary thereto. Under all the circumstances herein, we are not satisfied that petitioner was merely engaged in a temporary effort to improve his skills by refreshing and fortifying his knowledge of *320 the advances in technology which have pervaded all fields of scientific endeavor in recent years. Rather, we think that the record indicates that petitioner was simply a student indefinitely pursuing his general educational aspirations. In this context, we think that the rationale of Furner v. Commissioner, supra, and Harold Haft, supra, does not apply and that this case more properly falls within the ambit of Canter v. United States, supra, [5] and Henry G. Owen, supra.Petitioner's expenditures for improving his skills were nondeductible personal expenditures under section 262. Compare N. Kent Baker, 51 T.C. 243 (1968). The fact that petitioner, after his unsuccessful efforts to obtain employment, in July 1966 began to investigate relativity and the four-color map problem does not change our conclusion. These *321 endeavors, the extent of which is not specified in the record, do not limit petitioner's hiatus from the conduct of a trade or business, and therefore do not relate to the temporary versus indefinite dichotomy of petitioner's educational activities. These endeavors, while related to the general subject area of petitioner's previous employment, should more appropriately be termed a hobby, Frederick A. Purdy, 12 T.C. 888 (1949), or, alternatively, aimed toward the development of reputation, James M. Osborn, 3 T.C. 603 (1944), neither of which qualifies as a trade or business within the meaning of section 162. Since we have determined that petitioner was not engaged in any trade or business during 1964, we need not reach the question of whether these expenses would in fact qualify for deduction pursuant to the "improvement of skills" tests of either the 1958 or the 1967 regulations. See footnote 4, supra. Decision will be entered for the respondent. Footnotes
1. Only $630 of the $750 deduction shown on the return remains at issue because of petitioners' concession at trial.↩
2. There is no issue as to substantiating the amount in controversy.↩
3. All references, unless otherwise specified, are to the Internal Revenue Code of 1954, as amended. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. * * * ↩
4. The subjective intention test is embodied in respondent's 1958 regulations and the objective fact test is embodied in respondent's 1967 regulations. Section 1.162-5, Income Tax Regs. Respondent has ruled that taxpayer may elect to apply either set of regulations to taxable years beginning before January 1, 1968. Rev. Rul. 68-191, 1968-1 C.B. 67↩.
5. We recognize that Canter rested on the narrow ground that the taxpayer did not have a leave of absence from her former employment. Our reliance on that case does not rest upon this ground but rather on the a fortiori rationale elaborated upon in Judge Davis' dissent. See 354 F. 2d at pp. 355-356↩.