JOSEPH SORIN SCHNEIDER and LINDA F. SCHNEIDER, Petitioners V. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Schneider v. Commissioner
Docket No. 6981-81.
United States Tax Court
T.C. Memo 1983-753; 1983 Tax Ct. Memo LEXIS 28; 47 T.C.M. (CCH) 675; T.C.M. (RIA) 83753; December 19, 1983. Joseph Sorin Schneider, pro se. Christine Colley, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined deficiencies in petitioners' 1977 and 1978 income taxes in the amounts of $651 and $596 respectively. The issues for decision are as follows: 1) Whether petitioners are entitled, under section 162[1] and section 1.162-5, Income Tax Regs., to deduct the amounts of $5,130.29 for 1977 and $5,119.81 for 1978 as educational expenses incurred by petitioner Joseph *29 Sorin Schneider while pursuing a program of study leading to a Master's Degree in Business Administration; 2) Whether petitioners are entitled, under section 162, to deduct the amount of $987.54 for 1977 as job search expenses incurred by Mr. Schneider. [2]
FINDINGS OF FACT At the time they filed their petition in this case, petitioners Joseph Sorin Schneider and Linda F. Schneider resided in Cambridge, Massachusetts. Petitioners filed joint Federal income tax returns for both 1977 and 1978. Because Linda F. Schneider is a party solely by reason of having filed a joint return, petitioner Joseph Sorin Schneider will hereinafter be referred to as petitioner. Petitioner graduated with a Bachelor of Science degree from the *30 United States Military Academy at West Point (hereinafter West Point) in 1972. While attending West Point, he pursued a general engineering curriculum with an elective concentration in national security and public affairs. Pursuant to his West Point commitment, petitioner served on active duty in the United States Army from June 1972 to June 1977. During his 5-year period of active duty, petitioner was an infantry officer and was assigned to various leadership and administrative positions. Specifically, petitioner served as a vehicle maintenance officer in the infantry; a platoon leader, charged with training troops to be effective in the art of combat and leading them in field exercises; a base supply officer, responsible for managing assets of over 10 million dollars and supervising a civilian workforce of approximately 30 persons; an executive officer in Special Forces, charged, as second in command, with taking care of the administrative and logistical functions of his unit; and an assistant adjutant, charged with organizing a number of field training exercises involving other nations. In his resume, petitioner describes his professional Army experience as follows: *31 1972-1977
UNITED STATES ARMY
WEST GERMANY
Infantry Officer. Qualified as Ranger, Parachutist, Personnel Management, and Unconventional Warfare officer. Resigned active duty, June 1977, with rank of Captain. Personnel Officer and "A" Detachment Executive Officer, Special Forces Group. In charge of Personnel Action Center responsible for administration. Supervised structural reorganization of unit. Participated in eight NATO unconventional warfare operations. Principal staff officer for two exercises involving participants from eight allied nations. Received Norwegian, French, and German military awards and United States Army Commendation Medal. Company Commander with general management responsibilities. Developed unit into a highly cohesive disciplined organization by establishing effective training program. Supervised Post dinding facility which won two awards for excellence. Attended general management and personnel courses. Director of German-American Youth program. Platoon Leader of units with strengths around thirty-five personnel. Responsible for discipline, leadership, and professional development. Used by Senior Commanders as troubleshooter. *32 Assignments included the upgrading of the tactical and technical competence of three platoons with the poorest performance which, after several months under my command, were judged as best in their respective battalion/division proficiency competition. Personnel Officer, Airborne Infantry Battalion. Responsible for administration, personnel management policy, and legal affairs for unit of eight hundred soldiers. In June 1977, petitioner resigned his active duty commission with a rank of captain, and accepted a reserve commission. As an officer in the United States Army Reserve, petitioner is required to serve one weekend per month and one two-week period per year for active duty training. In his resume, petitioner describes his Army Reserve experience as follows: Since 1977
UNITED STATES ARMY
TAPPAN, NEW YORK
part-time
Adjutant of Special Forces Battalion responsible for administration, personnel management, and finance. Supervise staff of ten personnel. While he was still serving on active duty in the Army, petitioner attended the European Campus of the University of Southern California from 1975 to 1977, receiving a Master of Arts degree in *33 International Relations in June 1977. After he resigned his active duty commission, petitioner attended the Harvard University Graduate School of Business Administration from June 1977 until June 1979, when he received a Master's Degree in Business Administration (M.B.A.). Petitioner was a full-time student at the Harvard Business School and did not, during his years of attendance there, carry on any trade or business. While studying for his M.B.A. at Harvard, petitioner took the following courses: 1977 - 1978
Control Environmental Analysis for Management Finance Human Behavior in Organizations Organizational Problems Managerial Economics Marketing Production and Operations Management Written and Oral Communications 1978 - 1979
Business Policy Management of International Business Management of Small Enterprises: Starting New Ventures Competitive Decision Making Interpersonal Behavior: Two-Person Relationships Economics and Enterprise in International Relations Industry and Competitive Analysis Field Studies in Industry Analysis (Grade #1) Field Studies in Industry Analysis (Grade #2) Seminar: Current Problems of American Foreign *34 Policy During the summer of 1978, the summer between his first and second years at the Harvard Business School, petitioner was employed abroad in Holland to do marketing research by Indivers, a Dutch firm. In his resume, petitioner describes this summer job experience as follows: Summer 1978
INDIVERS
HOLLAND
For Trading Division, conducted market study of high-technology industries. Evaluated competitive environment, energy strategies, and investment options. Proposed diversification strategy. Rehired by Corporate President to develop methodology for study of industry in which United States Division competes. After completion of his M.B.A. degree, petitioner entered the Harvard University Kennedy School of Government in September 1979. He was a full-time student there until June 1980, when he obtained a Masters' degree in Public Administration (M.P.A.). Petitioner's only source of income earned in 1977 was from the United States Army in the amount of $9,037.97. On his 1978 income tax return, petitioner reported wages from his summer job in Holland in the amount of $3,150. Petitioner also earned and reported in his 1978 return wages in the amount *35 of $2,233.22 from the United States Army Reserve. Petitioner did not earn any income from business consulting prior to or during 1977. Upon completion of his M.B.A. and M.P.A. degrees at Harvard, petitioner did not return to active duty in the United States Army. At the time of the trial, petitioner was working as a business consultant, advising companies on how to develop business strategy. On his 1977 and 1978 income tax returns, petitioner deducted as an educational expense the cost of his Harvard Business School tuition for both years. On a Form 2106 attached to his 1977 Form 1040, petitioner stated that his reason for obtaining this additional education was: "To maintain and enhance my efficiency as a manager of people and material, in both a military and civilian capacity." On a Form 2106 attached to his 1978 Form 1040, petitioner stated that his reason for obtaining the education was to "develop general management skills." On both his 1977 and 1978 Forms 1040, petitioner listed his occupation as "Manager, U.S. Army." On his 1977 income tax return, petitioner also deducted as business expenses the amount of $987.54 which he designated on his return as "job search" *36 expenses. The total of $987.54 is comprised of the following amounts: Expense
Purpose
$710.54
Trip to England and France in 12/77
to seek summer employment with a
European company.
50.00
Trip to Washington, D.C. for
interview with United States Foreign
Service.
6.00
Parking fees in Washington, D.C.
82.00
Expenses of mailing applications to
graduate schools.
39.00
Expenses of mailing resumes.
18.00
Postage fees.
82.00
Attendance at Founders' Day,
West Point Association,
Heidelberg, Germany, 3/77. Meeting at
which fellow West Point graduates meet
and establish contact.
$987.54
OPINION 1. Educational Expenses
The first issue for decision is whether petitioner may deduct, as educational expenses under section 162 and section 1.162-5, Income Tax Regs., the cost of tuition incurred by him in pursuit of a Harvard M.B.A. degree during the years at issue. After careful consideration of the facts in this case, we conclude that petitioner is not entitled to an educational expense deduction.
Section *37 162 provides generally for the deduction of "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business." Section 162 does not specifically provide for the deduction of educational expenses as business expenses. Section 1.162-5(a), Income Tax Regs., [3] however, provides, insofar as it is here pertinent, that a taxpayer may deduct, as ordinary and necessary business expenses, outlays for education which maintains or improves skills required in his employment or other trade or business. Even if education undertaken by a taxpayer maintains or improves *38 his trade or business skills, the expenditures may not be deductible. They are considered personal or capital expanditures and are, therefore, not deductible if the education is part of a course of study which will qualify the taxpayer for a new trade or business. Section 1.162-5(b), Income Tax Regs.[4]
As indicated by the express language of section 162(a), referred to above, in order for educational expenses to be deductible, the taxpayer must be engaged in a trade *39 or business during the period the education is undertaken. In other words, the "expenditure must relate to activities which amount to the present carrying on of an existing business." Corbett v. Commissioner,55 T.C. 884, 887 (1971); see Canter v. United States,354 F.2d 352, 173 Ct. Cl. 723 (1965). The cessation of a trade or business by a taxpayer in order to undertake full-time study will disqualify the deduction if the cessation is indefinite rather than temporary. Furner v. Commissioner,393 F.2d 292, 294 (7th Cir. 1968), revg. 47 T.C. 165 (1966); Corbett v. Commissioner,supra.Amounts expended in preparation for the resumption of business at some indefinite future time are not deductible. See Frank v. Commissioner,20 T.C. 511 (1953). Petitioner argues that, in the work that he performed as an officer in the United States Army, he established himself in the trade or business of being a manager; by completing his M.B.A. studies at Harvard, he improved the skills required in that trade or business; and he continued in the same trade or business of being a manager upon *40 completion of his M.B.A. and M.P.A. degrees. Respondent, on the other hand, contends that petitioner, as an Army officer, both on active duty and reserve status, cannot be said to have been engaged in the trade or business of being a manager prior to or during the time he spent at Harvard; his M.B.A. and M.P.A. degrees qualified petitioner for a new trade or business; and petitioner's cessation of an established trade or business while pursuing his M.B.A. and M.P.A. degrees at Harvard was indefinite rather than temporary. For two reasons stated below, we agree with respondent. First, petitioner was not, within the meaning of section 162(a), "carrying on" any trade or business in 1977 and 1978, the years at issue, while attending Harvard. In the words of section 1.162-5(a), Income Tax Regs., because he had no "employment or other trade or business," his expenditures were not incurred for education which improved skills required in such an endeavor. Petitioner resigned his commission from the Army in June 1977 and had no plans to return to full-time military service. In fact, after obtaining his M.B.A. in 1979, he continued his studies at Harvard, obtaining *41 his M.P.A. degree in June 1980. Not until after completing this third masters degree program did he enter the business world as a consultant. In no sense of the word can petitioner's period of study at Harvard be described as a temporary leave of absence, which was "a normal incident" of carrying on a business in which he was then engaged. See Corbett v. Commissioner,supra at 887. Compare Furner v. Commissioner,supra at 295. At most, his expenditures were made in preparation for the resumption of employment of some kind at some future time. [5] It may well be that, as he testified, "the reason I went to Harvard" was "to improve myself," but such a general purpose will not suffice for the purposes of the regulation. Second, petitioner's education was designed to, and did, prepare him for a new trade or business within the meaning of section 1.165-5(b)(3), Income Tax Regs. The record shows that he graduated from the United States Military Academy with a Bachelor of Science degree, having completed *42 a basic engineering curriculum with an elective concentratrion in national security and foreign affairs. Petitioner was trained to be an Army officer and, in fact, served as an infantry officer during his 5-year active duty commitment. Prior to the period here in controversy, he had never served in the business world. His period of study at Harvard followed immediately his resignation of his active duty Army commission. Petitioner's testimony and resume indicated that, as an Army officer, he served in a variety of leadership and administrative positions, including platoon leader, base supply officer, executive officer, and assistant adjutant. Petitioner, however, has not shown any substantial relationship between the skills required in these Army positions and the course of study that he pursued at Harvard as described above in our Findings of Fact. Petitioner's testimony as to the enormity of the Defense Department budget, the importance of the careful use of Government funds, and comparisons of the supervisory responsibilities of Army officers and those of business executives will not suffice to show that his Harvard studies were not designed to prepare him for a new trade *43 or business. Petitioner argues that his "profession is that of a Manager" and that he was in the trade or business of being a "manager" before, after, and during his attendance at Harvard. He maintains that "the performance of management, administrative and planning functions" is "the single most critical component" of all of his jobs, "whether in uniform or in a business suit." Wholly apart from the fact that petitioner was a full-time student during an indefinite period while at Harvard, we think the concept of being in the business of being a "manager" is too amorphous to meet the requirements of the regulation. A chef "manages" his kitchen; a teacher "manages" his classroom; a garage owner "manages" his automobile repair business. All of these lines of work require the performance of management, administrative and planning functions, but a chef, teacher, and garage owner are not engaged in the same trade or business. Determining whether a taxpayer's activities constitute a trade or business for the purposes of section 162(a) is a question of fact. Morton v. Commissioner,174 F.2d 302 (1949); *44 Corbett v. Commissioner,supra."If substantial differences exist in the tasks and activities of various occupations or employments, then each such occupation or employment constitutes a separate trade or business." Davis v. Commissioner,65 T.C. 1014, 1019 (1976). Thus, a patent trainee required to study law was denied deductions of law school expenses in Weiszmann v. Commissioner,52 T.C. 1106 (1969), affd. 443 F.2d 29 (9th Cir. 1971); a public accountant was denied deductions for the costs of courses qualifying him to be a certified public accountant in Glenn v. Commissioner,62 T.C. 270 (1974); and a practical nurse was denied deductions for expenses incurred for education which qualified her to be a physician's assistant. Reisinger v. Commissioner,71 T.C. 568 (1979). The taxpayers in these cases were denied deductions because the courses they pursued qualified them for new trades or businesses. Similarly, petitioner's work as an Army officer is a different trade or business from the consulting business for which his course of study at Harvard prepared him. Petitioner *45 pins his case mainly upon this Court's opinion in Sherman v. Commissioner,T.C. Memo. 1977-301. In Sherman, this Court allowed a deduction of educational expenses for a Harvard M.B.A. degree by a former Army officer. Petitioner's reliance on that case is misplaced, however, because the facts of Sherman and those in the instant one are distinguishable in several significant respects. In Sherman, the taxpayer resigned his commission in the Army and was employed as a civilian by the Army and Air Force Exchange Service (AAFES) for 2 years prior to his entry into the Harvard M.B.A. program. As Chief of its Plans and Programs office, Sherman's duties included formulating and monitoring management plans, representing his region in discussions with the Departments of Defense and State, review and evaluation of major policies involving purchasing, inventory control, and personnel management. Before going to Harvard, Sherman requested and was denied a 2-year leave of absence. While at Harvard, Sherman applied for re-employment with the AAFES, but was not re-employed there due to an overall AAFES staffing reduction. Upon graduation from Harvard's M.B.A. program, *46 Sherman was hired by private industry as a director of planning and Research. In allowing Sherman to deduct his educational expenses, this Court found that he had established himself in the trade or business of business administration before he went to Harvard through his work as a civilian employee of the AAFES; that his study at Harvard was for a temporary and definite period, and that he stayed in the same field upon graduation. Petitioner's military duties as an Army officer, in contrast, were not sufficiently similar to Sherman's civilian AAFES duties to support a finding that petitioner established himself in the trade or business of business administration prior to his entry into Harvard. Further, petitioner terminated his active duty Army status and never, as did Sherman, attempted to return full-time to his former employer. Finally, contrary to the facts in Sherman, as we have discussed above, the cessation of petitioner's former trade or business while at Harvard was indefinite, rather than temporary and, therefore, he was not carrying on a trade or business while he attended Harvard. [6]
*47 2. Job Search Expenses
We next consider whether petitioner is entitled to the claimed job search expense deduction under section 162(a)[7] for trips to Europe and Washington, D.C., and expenses involving resume preparation and application fees to graduate school. This Court has held that expenses incurred in seeking new employment in the same trade or business are deductible under section 162(a), Cremona v. Commissioner,58 T.C. 219 (1972); Kenfield v. Commissioner,54 T.C. 1197 (1970); Primuth v. Commissioner,54 T.C. 374 (1970). We have also held, however, that expenses *48 incurred in seeking or investigating a new trade or business are not deductible under section 162(a). Dean v. Commissioner,56 T.C. 895 (1971); Frank v. Commissioner,supra.
We have held above that, prior to his entry into Harvard, petitioner was engaged in the trade or business of serving as an Army officer, and that his study for an M.B.A. degree qualified him for a new trade or business. It follows that the claimed expenses for application to graduate school and for seeking post-military employment, including his summer job in Europe, were incurred by petitioner in seeking a new trade or business and, therefore, do not qualify as deductible business expenses. [8]
To reflect the foregoing, Decision will be entered for the respondent
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. In the notice of deficiency, respondent disallowed, in addition to the above amounts, a $45.50 deduction for professional dues for 1977, and a $71.08 deduction for employee business expenses for 1978. In his petition, however, petitioner does not contest these two items. We, therefore, do not address these items as part of this opinion.↩
3. Sec. 1.162-5. Expenses for education. (a) General Rule. Expenditures made by an individual for education * * * which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education-- (1) Maintains or improves skills required by the individual in his employment or other trade or business, * * * * * *↩
4. Sec. 1.162-5(b), Income Tax Regs., provides in part at follows: (b) Nondeductible educational expenditures-- * * * (3) Qualification for new trade or business. (i) The second category of nondeductible educational expenses within the scope of subparagraph (1) of this paragraph are expenditures made by an individual for education which is part of a program of study being pursued by him which will lead to qualifying him in a new trade or business. In the case of an employee, a change of duties does not constitute a new trade or business if the new duties involve the same general type of work as is involved in the individual's present employment. * * *↩
5. At one point, we note, he sought employment in the Foreign Service with the U.S. Department of State.↩
6. In Sherman v. Commissioner,T.C. Memo. 1977-301, citing Canter v. United States,354 F.2d 352, 173 Ct. Cl. 723 (1965) and Corbett v. Commissioner,55 T.C. 884 (1971), the Court stated: [W]hen a taxpayer leaves his trade or business for a prolonged period of study with no apparent continuing connection with either his former job or any clear indication of an intention to actively carry on the same trade or business upon completion of study, the taxpayer is not "carrying on" his trade or business while attending school. * * *↩
7. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including-- * * * (2) traveling expenses (including amounts expended for meals and lodging other than amounts which are lavish or extravagant under the circumstances) while away from home in the pursuit of a trade or business; * * * * * *↩
8. Evans v. Commissioner,T.C. Memo. 1981-413↩.