DAVID J. OWENS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Owens v. Commissioner
Docket No. 16087-79.
United States Tax Court
T.C. Memo 1985-4; 1985 Tax Ct. Memo LEXIS 630; 49 T.C.M. (CCH) 427; T.C.M. (RIA) 85004; January 2, 1985. *630 Held: Petitioner was not in the trade or business of teaching in 1976 and the education expenses and other miscellaneous expenses incurred by him are not deductible under sec. 162, I.R.C. 1954. David J. Owens, pro se. Michael J. Cooper, for the respondent. CHABOT MEMORANDUM FINDINGS OF FACT AND OPINION CHABOT, Judge: Respondent determined a deficiency in Federal individual income tax against petitioner for 1976 in the amount of $607. After a concession by respondent the issue for decision is whether petitioner may deduct under section *631 162[1] the following: (1) education expenses incurred in his Ph.D. program; and (2) miscellaneous expenses for attending a geography conference, dues to various societies, and subscriptions to publications. FINDINGS OF FACT Some of the facts have been stipulated; the stipulation and the stipulated exhibits are incorporated herein by this reference. When the petition was filed in the instant case, petitioner resided in Belleville, Illinois. A. Military Career
Petitioner enlisted in the United States Air Force (hereinafter sometimes referred to as "the USAF") on April 16, 1942. After about 20 years of active service, on July 1, 1966, petitioner entered the USAF Retired Reserve. [2] During his military career, petitioner was assigned to various positions as shown in table 1. Table 1 Duty Assignment
From
To
Pilot Training
04/16/42 04/21/43 Pilot & Squadron Operations Officer
04/22/43 09/06/45 (Operations Officer--Air Force Reserve)
(09/07/45)
(10/15/49)
Commander
10/16/49 07/08/51 Operations & Training Adviser
07/09/51 03/11/53 Operations & Training Adviser (Paraguay)
03/12/53 10/04/54 Squadron Adjutant
10/05/54 02/14/55 Educational Specialist
02/15/55 02/28/55 Wing Ground Training Officer
03/01/55 04/19/56 Pilot Transport Squadron
04/20/56 05/20/58 Assistant Air Operations Officer
05/21/58 05/31/58 Commander
06/01/58 10/24/59 Squadron Operations Officer
10/25/59 04/12/60 Student - Jet Qualification Course
04/13/60 06/12/60 Squadron Operations Officer
06/13/60 03/23/61 Executive Officer (Spain)
03/24/61 07/31/61 Flight Facilities Officer (Spain)
08/01/61 03/31/62 Commander (Spain)
04/01/62 08/04/63 Special Assistant to the Commander (Spain)
08/05/63 02/09/64 Chief, Air Operations Division
02/10/64 09/30/64 Chief, Flight Operations Division
10/01/64 07/31/65 Chief, NOTAM/Navaid
08/01/65 12/31/65 Chief, NOTAM/Navid
01/01/66 01/25/66 Air Traffic Controller
01/26/66 06/30/66 *632 In December 1949, petitioner completed an Academic Instructor Course at the USAF Special Staff School of the Air University, at Craig Air Force Base, Alabama. On December 1, 1949, and again on September 1, 1950, petitioner was appointed to instructor positions. The record does not indicate the length of these appointments. The USAF recognizes various military occupation specialties and awards specialty code numbers accordingly. In 1949, petitioner was awarded an Air Force Specialty Code (hereinafter sometimes referred to as "AFSC") as an instructor. During his military career he was awarded at least six other AFSCs, including the following: (1) operations staff officer, (2) air traffic controller, (3) transport pilot, (4) tactical fighter pilot, (5) communications-electronics staff officer, and (6) air operations officer. The USAF maintains a separate AFSC for a Cartographic-Geodetic Officer position. This specialty position entails managing and coordinating cartographic and geodetic programs and activities *633 while providing technical expertise in related areas. During his military career, petitioner neither received this AFSC nor performed the vast majority of activities associated with this position. During his military career, petitioner's duties in the positions for which he was awarded an AFSC and in his other duty assignments included the duties of a military instructor, teacher, education officer, on-the-job-training officer, teacher supervisor/administrator, and staff training evaluator. In addition, petitioner was an active command pilot, amassing more than 4,500 flying hours. In order for petitioner to adequately perform his flying responsibilities he had to read, interpret, and use maps, aerial navigation charts, aerial photographs, and radar imagery; he also had to read, interpret, and navigate over geographic landscapes, through meteorological and climatological phenomena, and be able to analyze and interpret the physical and statistical aspects of these practical geographic phenomena. All of these skills, except flying the airplane, are also duties and functions demanded of the professional geographer in civilian life. Petitioner was not in the trade or business *634 of teaching in 1966, when he retired from the USAF. B. Educational Background and Teaching Career
In 1948, petitioner was graduated from West Virginia University with a degree of Bachelor of Science in Business Administration. In 1967, petitioner received his Master of Arts degree in Geography from Southern Illinois University. Thereafter, in the fall of 1967, petitioner enrolled in the Doctor of Philosophy degree (hereinafter sometimes referred to as "Ph.D.") program in Geography at the University of Kansas. On May 23, 1977, petitioner received his Ph.D. In Geography. Petitioner's Ph.D. dissertation was entitled "A Historical Geography of the Indian Missions in the Jesuit Province of Paraguay: 1609 - 1768." Petitioner's work on this dissertation involved tedious and difficult research using Latin documents written by Jesuit missionaries in South America. From 1968 through 1977, petitioner utilized the facilities of the Vatican Microfilm Library in St. Louis, Missouri, to assist him in his research. Petitioner frequently spent two or three days a week viewing this library's source documents. In addition, in 1974 petitioner did a field survey in South America *635 to supplement his other research. Because of the level of difficulty, petitioner received numerous extensions on his dissertation deadline. During the academic year 1967-1968, in addition to his doctoral studies, petitioner worked as a part-time graduate teaching assistant at the University of Kansas. He was a geography laboratory instructor half time in the fall semester and quarter time in the spring semester. For the academic year 1969-1970, petitioner taught geography at St. Louis University. He was paid at the rate of $10,600 per year. He was not rehired for the following year. From 1970 through 1972, petitioner taught part time in various school districts in Illinois. Petitioner was certified by the State of Illinois to teach grades 6 through 12. [3] In 1970, petitioner earned $728 as a teacher at O'Fallon Township High School. During 1971, he was a teacher in three school districts, for which work he earned a total of $1,797. Petitioner earned some income from *636 teaching in 1972. From 1972 until 1978, petitioner did not participate in any further teaching activities. In 1978, petitioner substituted for one day in the Collinsville School District and received $27; in 1979, he taught for one semester at Belleville Area Community College and was paid $675. This 1979 employment was the first time since 1969-1970 that petitioner taught a geography course at the post secondary level. In 1976, a Ph.D. was a requirement [4] for tenure as a geography professor at most four year colleges and universities in the United States. From 1971 through 1978, petitioner applied for teaching positions in the geography departments of various universities and community colleges.Also, in 1971, petitioner applied for various full-time teaching positions at the secondary school level. However, despite his efforts, he failed to secure any such employment. In 1978, petitioner accepted a job as a map compiler with the Defense Mapping Agency in St. Louis, Illinois. This position did not require a Ph. *637 D. in geography. On his 1976 Federal individual income tax return, petitioner deducted education expenses as set forth in table 2. Table 2 Tuition
$120.00
Dissertation Expenses
182.90
Books and Supplies
29.43
Registration of Teachers Certificate
4.00
Meals and Lodging away from home
200.00
Auto Expenses
1,123.20
$1,659.53
In addition, petitioner deducted miscellaneous expenses as set forth in table 3. Table 3 Geography Conference El Paso, Texas
$465.10
Ass'n of American Geographers and Special Publications
$37.30
American Geographical Society
25.00
National Geographic Society
8.50
Conference for Latin Americanist Geographers
6.00
Retired Officers Ass'n
10.00
Foundation for Illinois Archeology
25.00
West Virginia University Alumni Ass'n
8.50
National Rifle Ass'n
5.00
Federal Aviation News
6.20
Latin American Digest
3.00
134.50
$599.60
Respondent disallowed the entire amounts described in tables 2 and 3. Petitioner was not in the trade or business of teaching in 1976. OPINION Petitioner maintains that the activities he performed while serving in the USAF are analogous to the *638 civilian profession of teaching. He contends that, ever since he received his Masters degree in Geography in 1967, he has consistently remained a geography instructor. The expenses incurred in 1976 while completing his Ph.D. program at the University of Kansas were to maintain and improve his academic skills and knowledge as a geography teacher. From this, he concludes that the expenses in dispute are deductible as ordinary and necessary business expenses pursuant to section 162. Respondent argues that petitioner's activities both in the USAF and thereafter as a civilian did not constitute carrying on a trade or business as a teacher or geographer. Moreover, respondent contends that even if petitioner was a teacher while in the USAF [5] he was either no longer in the profession in 1976 or the expenses were incurred to qualify petitioner for a new trade or business--that of being a tenured geography teacher. We agree with *639 respondent that petitioner was not in the trade or business of teaching in 1976. Personal expenses are not deductible, unless the contrary is "expressly provided" in chapter 1 (sec. 262) [6]. Ordinarily, education expenses are regarded as personal. See, e.g., Welch v. Helvering,290 U.S. 111, 115-116 (1933). However, section 162(a)[7] --which is in chapter 1--expressly provides for the deduction of all ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. As section 162(a) has been interpreted, under certain circumstances education expenses may constitute deductible trade or business expenses if the education for which the expenses are made maintains or improves the skills required in the taxpayer's employment or other trade or business. See section 1.162-5(a), Income Tax Regs.[8]
*640 As we see it, the determinative question is whether petitioner was in the trade or business of teaching in 1976. In order for an education expense to be deductible as a business expense, the expense must relate to activities which amount to the present carrying on of an existing business. Reisinger v. Commissioner,71 T.C. 568, 572 (1979); see Koons v. Commissioner,35 T.C. 1092, 1100 (1961). Nevertheless, although currently unemployed, a taxpayer can still be engaged in a trade or business if he or she was previously involved in and actively seeks to return to that trade or business. Haft v. Commissioner,40 T.C. 2, 6 (1963); see Reisinger v. Commissioner,71 T.C. at 572. In this regard, courts tend to focus on the temporary nature of the interim period, the extent to which the individual actively pursues other employment, and the amount of remunerative activities actually performed. Canter v. United States,173 Ct. Cl. 723, 726-728, 354 F.2d 352, 353-354 (1965); Reisinger v. Commissioner,71 T.C. at 573-574; Corbett v. Commissioner,55 T.C. 884, 887-889 (1971); *641 Haft v. Commissioner,40 T.C. at 6. Whether the taxpayer is carrying on a trade or business in a particular year (within the meaning of section 162(a) and the nature of such business are questions of fact. Higgins v. Commissioner,312 U.S. 212, 217 (1941); Reisinger v. 71 T.C. at 572; Barnett v. Commissioner,69 T.C. 609, 613 (1978); Corbett v. Commissioner,55 T.C. at 887. The burden of proof is on petitioner (see, e.g., Welch v. Helvering,290 U.S. at 115; Rule 142(a), Tax Court Rules of Practice and Procedure) to show that the expenditures in question relate to activities which amount to the present carrying on of an existing business. Reisinger v. Commissioner,71 T.C. at 572; Koons v. Commissioner,35 T.C. at 1100. From 1949 to 1966, the second stage of petitioner's active duty military career, petitioner did a little teaching in the course of a wide variety of military activities. However, the record does not show that he did any teaching work in the USAF after 1955 and consequently, we have found that, when he *642 retired from the USAF in 1966 petitioner was not in the trade or business of teaching. Petitioner taught part time, as a graduate teaching assistant, for the academic year 1967-1968. His most extensive teaching work was in the 1969-1970 academic year. He then taught on occasion in 1970, in 1971, and (to an extent undisclosed in the record) in 1972. He next taught for one day in 1978 and part time for one semester in 1979. It is not clear whether petitioner's teaching activities from 1967 to 1972 placed him in a trade or business, whether they were essentially preparatory work, or whether they were ancillary to his Ph.D. program. In any event, the hiatus from 1972 through at least 1979 (excluding the one day in 1978 and the one course in 1979) causes us to conclude that he was not in the trade or business of teaching during 1976, the only year before the Court. On answering brief, petitioner asserts that "the present case is very similar to Furner v. Commissioner,47 T.C. 165 (1966), rev'd,393 F.2d 292 (7th Cir. 1968)", and "that Ford v. Commissioner,487 F.2d 1025 (9th Cir. 1973), aff'g56 T.C. 1300 (1971) *643 is almost identical to and therefore supports his case." In Furner, the taxpayer was a teacher who stopped teaching for 1-year to pursue full-time study directly connected with improving her teaching skills. At the end of her 1- year of study, she returne to full-time teaching. In Ford, the taxpayer, an established teacher, also returned to teaching after a 1-year hiatus, immediately after completing his advanced studies. Petitioner's prehiatus status as a teacher was far less clear, his hiatus was much longer, and his posthiatus teaching was both part time and brief.Neither Furner nor Ford helps petitioner's case. Petitioner confuses being a member of a profession with engaging in a trade or business. Mere membership in a profession is not in itself the carrying on of a trade or business. Reisinger v. Commissioner,71 T.C. at 572; Wyatt v. Commissioner,56 T.C. 517, 520 (1971). The fact that petitioner participated in professional meetings and attended geography conventions is not equivalent to teaching. Furthermore, being state certified to teach is not comparable to actually engaging in the trade or business of teaching. *644 Since, petitioner did not spend enough time with both of his feet firmly on the ground as a teacher to be presently carrying on such existing trade or business in 1976, he is not entitled to deduct under section 162 any of his education expenses. As a result, we determine that the miscellaneous expenses incurred in 1976 are also not deductible. Because of our conclusions, we need not address the issue of whether petitioner's Ph.D. studies were incurred to qualify him for a new trade or business. We hold for the respondent. In light of respondent's concession, Decision will be entered under Rule 155.
Footnotes
1. Unless indicated otherwise, all section and chapter references are to sections and chapters of the Internal Revenue Code of 1954 as in effect for the year in issue.↩
2. Petitioner receives bifurcated pension payments from the USAF: (a) for a 40 percent disability and (b) as deferred income from the USAF Retired Reserve.↩
3. On October 25, 1966, petitioner was provisionally certified by the State of Illinois Teacher Certification Board and on September 24, 1971, petitioner received his teacher's certificate.↩
4. Some colleges will hire an individual who does not possess a Ph.D. if he has demonstrated substantial professional qualifications and/or accomplishments.↩
5. Respondent maintains that even if petitioner was in the trade or business of teaching in 1976, the miscellaneous expenses relating to the Retired Officers' Association, National Rifle Association, and Federal Aviation News would still be nondeductible.↩
6. SEC. 262. PERSONAL, LIVING, AND FAMILY EXPENSES. Except as otherwise expressly provided in this chapter, no deduction shall be allowed for personal, living, or family expenses. ↩
7. Section 162(a) provides in relevant part as follows: SEC. 162. TRADE OF BUSINESS EXPENSES. (a) In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * * ↩
8. Sec. 1.162-5. Expenses for eduction. (a) General rule. Expenditures made by an individual for education (including research undertaken as part of his educational program) which are not expenditures of a type described in paragraph (b)(2) or (3) of this section are deductible as ordinary and necessary business expenses (even though the education may lead to a degree) if the education-- (1) Maintains or improves skills required by the individual in his employment or other trade or business, or (2) Meets the express requirements of the individual's employer, or the requirements of applicable law or regulations, imposed as a condition to the retention by the individual of an established employment relationship, status, or rate of compensation.↩